921 P.2d 746

**IDAHO POWER COMPANY, an Idaho corporation, Plaintiff–Counterdefendant–Respondent, Cross Appellant,**

v.

**COGENERATION, INC., an Idaho corporation, Defendant–Counterclaimant–Appellant, Cross Respondent.**

**No. 22669.**

Supreme Court of Idaho,
Lewiston, May 1996 Term.

Aug. 12, 1996.

Orndorff & Trout, Boise, for appellant. Kim J. Trout, argued.

Evans, Keane, Boise, for respondent. Bruce C. Jones, argued.

JOHNSON, Justice.

This is a contract dispute between a public utility and a cogeneration company developing a hydroelectric facility. We conclude that the trial court should not have granted summary judgment in favor of the utility because a question exists whether there has been an event of force majeure that would excuse the cogenerator from its failure to post a contractually required security bond.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS

Cogeneration, Inc. owns the right to build a forty-three megawatt hydroelectric facility at Auger Falls on the Snake River. The

48

Auger Falls project is a "qualified facility" (QF) under the Public Utility Regulatory Policies Act of 1978 (PURPA). As a QF, Cogeneration invoked provisions of PURPA which require a utility to purchase power from a cogenerator at the utility's avoided cost.

In January 1992, Idaho Power Company and Cogeneration entered into a "firm energy sales agreement" (the agreement) with a fixed term of thirty-five years. Under the agreement Cogeneration was obligated to construct and operate a hydroelectric facility, and Idaho Power was obligated to purchase energy from the facility. The agreement was filed with and approved by the Idaho Public Utilities Commission (IPUC).

The agreement required Cogeneration to post cash or securities (the security) during the development process to ensure timely completion of the facility by February 1997. Cogeneration made the first installment of the security by June 1, 1992 as required. It did not post the second installment of the security due January 1, 1994.

Idaho Power immediately notified Cogeneration that it was in default of the agreement. Cogeneration responded by invoking the agreement's force majeure provision. This provision suspends both parties' performance for the duration of an event of force majeure, defined as "any cause beyond the control of [Cogeneration] or of Idaho Power which, despite the exercise of due diligence, such Party is unable to prevent or overcome." According to Cogeneration, after a lengthy dispute the Idaho department of environmental quality unilaterally and arbitrarily revoked the project's water quality certificate on December 30, 1993, which in turn prevented Cogeneration from securing the financing necessary to post the security.

In December 1994, Idaho Power petitioned IPUC and sued Cogeneration in district court seeking a declaration in each case that Cogeneration had defaulted on the agreement because of its delinquency in posting the security. Idaho Power first pursued the proceedings before IPUC where Cogeneration requested a declaration that an event of force majeure had occurred.

In its Order No. 25971, IPUC first reasoned that it had "concurrent jurisdiction and authority to interpret contract terms and conditions regarding issues that may adversely affect the public interest, i.e., the required posting of a security performance bond." It then concluded that "[a] failure to post the performance bond when otherwise required to do so adversely affects the public interest." IPUC therefore ordered Cogeneration to post the second installment of the security by May 1, 1995, apparently based on Cogeneration's representations that it would have the necessary permits and financing at that time.

Cogeneration did not, however, deposit the second security installment by May 1, and both parties then sought a reconsideration from IPUC. In Order No. 26041, IPUC declined to reconsider its earlier order, and did not accept the parties' request to interpret and declare their contractual obligations, stating that "[g]iven the facts of this case, the Commission declines to exercise jurisdiction to decide whether under the terms of the underlying Agreement an event of *force majeure* has occurred and whether an event of *force majeure* would excuse Cogeneration's performance under Agreement ¶ 4.1.1.2." Instead, it suggested that a state district court would be a "more appropriate forum" for these issues. Neither party appealed either IPUC order.

Instead the parties proceeded with the lawsuit in district court. Idaho Power asserted that Cogeneration's failure to comply with IPUC's order put it in default of the agreement. On Idaho Power's motion for partial summary judgment, the trial court ruled that Cogeneration was in default of the agreement, even assuming that an event of force majeure had occurred. After first concluding that PURPA did not prohibit IPUC from ordering Cogeneration to post the security, the trial court ruled that Cogeneration's failure to comply with the order was a material breach because in the agreement Cogeneration warranted that it would comply with IPUC orders for the full contract term. With regard to Cogeneration's argument that the IPUC order cannot nullify the agreement's force majeure provision, the trial

court stated that "only IPUC can excuse performance of its orders" on force majeure grounds, and that in this instance "IPUC declined to do so." Cogeneration appealed.

## II.

## COGENERATION IS ENTITLED TO LITIGATE FORCE MAJEURE

Cogeneration asserts that it is entitled to litigate whether force majeure protected it from default of its obligation to post the second security installment. We agree.

■ The dispositive issue in this appeal is the validity and effect of IPUC's order that Cogeneration post the second security installment. Idaho Power contends that Cogeneration cannot sustain a force majeure defense in the face of IPUC's order to post the security "for the public interest." We disagree.

In making its decision on Idaho Power's motion for partial summary judgment, the trial court was presented with the following undisputed facts: a January 1, 1994 breach by Cogeneration of its obligation to post the second installment of the security; notice of the January 1st default; a claim of force majeure; and an IPUC order declining to address the issue of force majeure, but nonetheless giving Cogeneration until May 1, 1995—a seventeen month extension—to post the security as otherwise provided in the agreement. At Idaho Power's urging, the trial court focused exclusively on the IPUC requirement that Cogeneration post the second installment of the security by May 1, 1995. The trial court concluded that Cogeneration's "violation" of the IPUC order was a material breach of the agreement which could prevail over an event of force majeure under the agreement.

■ We conclude that the trial court should not have given the IPUC order the weight and significance it did. While there is no dispute concerning IPUC's authority to approve PURPA contracts, the subsequent interpretation and enforcement of contracts does not generally fall within its powers. *Afton Energy, Inc. v. Idaho Power Co.,* 111 Idaho 925, 928, 729 P.2d 400, 403 (1986)

(*Afton IV*) (declaring district court rather than IPUC the appropriate forum for contract disputes between utilities and QF's); *see also Lemhi Tel. Co. v. Mountain States Tel. & Tel. Co.,* 98 Idaho 692, 696, 571 P.2d 753, 757 (1977). It is true that we have said IPUC can modify a utility contract when it "is adverse to the public interest," but here IPUC neither created nor eliminated a contract obligation based on the public interest. *Lemhi,* 98 Idaho at 697, 571 P.2d at 758; *Agric. Prod. Corp. v. Utah Power & Light Co.,* 98 Idaho 23, 29, 557 P.2d 617, 623 (1976). Even if IPUC can modify PURPA contracts in the public interest, there is no evidence that it was in the public interest for IPUC to grant Cogeneration a seventeen month extension on posting the security.

As IPUC itself recognizes, district court is the appropriate forum for utility contract disputes. Accordingly, IPUC's attempted enforcement of the agreement is of no consequence. We focus on Cogeneration's failure to post the second security installment in January 1994, Idaho Power's subsequent notice of default, and Cogeneration's defense of force majeure.

■ Although the agreement required Cogeneration to the post the security, it also provides for the suspension of both parties' performance of their "obligations under this Agreement" for the duration of an event of force majeure. Therefore, the posting of the security is suspended for the duration of an event of force majeure.

For these reasons, the trial court should not have granted partial summary judgment but should have allowed Cogeneration to litigate whether an event of force majeure protected it from default in posting the second security installment on January 1, 1994.

## III.

## CONCLUSION

We vacate the trial court's partial summary judgment and remand for further proceedings.

**50**

We award Cogeneration costs, but not attorney fees, on appeal.

McDEVITT, C.J., SCHROEDER, J., and Justice Pro Tem HART, concur.

SILAK, Justice, specially concurring:

I concur in the result reached by the Court but arrive at that result differently.

Although the interpretation of contracts does not, as a general rule, fall within the IPUC's jurisdiction, this Court has recognized an exception where the parties have agreed to submit a dispute involving contract interpretation to the IPUC. *Afton IV,* 111 Idaho at 929, 729 P.2d at 404, citing *Bunker Hill Co. v. Washington Water Power Co.,* 98 Idaho 249, 252, 561 P.2d 391, 394 (1977).

The Agreement between Cogeneration and Idaho Power provides, at paragraph 21.1, as follows:

> All disputes relating to or arising under this Agreement, including, but not limited to, the interpretation of the terms and conditions of this Agreement, will be submitted to the Commission for resolution.

If the IPUC had merely interpreted the force majeure clause in this case I believe it would have had jurisdiction to do so based upon the above exception to the limitation on the IPUC's jurisdiction to interpret contracts.

However, I agree with the Court's opinion that the IPUC went beyond the interpretation of a contract by modifying the timing of the security requirement without making the finding that such a modification was necessary to protect the public interest. Thus, the IPUC had no jurisdiction to enter an order postponing the posting of the second installment to May 1, 1995, and it was error for the district court to find that Cogeneration's noncompliance with that order was a material breach. I therefore concur in the result reached by the Court.