9 P.3d 1204

**IDAHO POWER COMPANY, an Idaho corporation, Plaintiff–Counterdefendant—Respondent–Cross Appellant.**

v.

**COGENERATION, INC., an Idaho corporation, Defendant–Counterclaimant—Appellant–Cross Respondent.**

No. 24865.

Supreme Court of Idaho,
Boise, January 2000 Term.

July 13, 2000.

Rehearing Denied Sept. 26, 2000.

Manweiler, Wilcox, Trout & Manweiler, Boise for appellant. Kim J. Trout argued.

Evans, Keane LLP, Boise for respondent. Bruce C. Jones argued.

SILAK, Justice.

This is an appeal by Cogeneration, Inc. (Cogeneration) from a district court judgment in favor of Idaho Power Company (Idaho Power) in a breach of contract action. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Cogeneration held a Federal Energy Regulatory Commission (FERC) license to construct a hydroelectric facility at Auger Falls on the Snake River. Under federal law, Idaho Power was obligated to enter into an agreement with Cogeneration for the purchase of power from the Auger Falls plant after its completion.

In January 1992, Idaho Power and Cogeneration entered into a "firm energy sales agreement" (the Agreement) that required Cogeneration to have the power plant constructed and on line by January 1, 1996 with operations to begin by February 1, 1996, and to post a liquid security deposit (the security) to assure full and timely performance of its obligations. The security was to be paid in two installments: the first, on or before June 1, 1992 in the amount of $250,000, and the second, on or before January 1, 1994 in the amount of $1,874,800.

The Agreement contained an additional clause, which excused any affected performance if an event of *force majeure* occurred. As defined in relevant part by the Agreement:

> [*F*]*orce majeure* or an event of *force majeure* means any cause beyond the control of the Seller or of Idaho Power which, despite the exercise of due diligence, such Party is unable to prevent or overcome, including but not limited to an act of God, fire, flood, explosion, strike, sabotage, an act of the public enemy, **civil or military authority**, court orders, laws or regulations, insurrection or riot, an act of the elements or lack of precipitation resulting in reduced water flows for power production purposes. If either party is rendered wholly or in part unable to perform its obligations under this Agreement because of an event of *force majeure*, both parties shall be excused from **whatever performance is affected by the event of** *force majeure*, provided that:
>
> (1) The non-performing Party shall, as soon as is reasonably possible after the occurrence of the event of *force majeure*, give the other Party written notice describing the particulars of the occurrence.
>
> (2) The suspension of performance shall be of no greater scope and of no longer in duration than is required by the event of *force majeure*.
>
> (3) No obligations of either Party which arose before the occurrence causing the suspension of performance and which could and should have been fully performed before such occurrence shall be excused as a result of such occurrence.

(emphasis added).

Cogeneration obtained a letter of credit from its financing partner, Calpine, Inc. (Calpine) and made the first installment of the security by June 1, 1992 as required by the Agreement.

As part of the process for building a hydroelectric power facility on the Snake River, Cogeneration was required to obtain permits from various federal and state agencies. A "401 Certificate" from the Idaho Department of Environmental Quality (DEQ) was required to ensure that all relevant environmental considerations had been met. In addition, a "404 Certificate" from the Army Corps of Engineers (Corps) was required before any construction could be undertaken in the streambed of the Snake River. A 401 certificate is a prerequisite to the issuance of a 404 certificate by the Corps.

In the early 1980's, Cogeneration had obtained a 401 certificate from the DEQ and received a reconfirmation of the certificate in January, 1992. However, in February, 1992, the DEQ revoked the existing 401 certificate and established an extensive set of new criteria for Cogeneration to meet in order to obtain a new one. Cogeneration did not appeal the revocation or otherwise challenge the DEQ's action. Instead, Cogeneration entered into negotiations with the DEQ regarding requirements for the issuance of a new certificate. In October, 1992, Cogeneration and the DEQ negotiated a consent order and issuance of a new 401 certificate, subject to a list of conditions to be met by Cogeneration.

Cogeneration was unable to meet the conditions of the new 401 certificate to the satisfaction of the DEQ and in December, 1993, the DEQ notified the Corps that the newly issued 401 certificate was being revoked due to non-conformance with conditions imposed by the consent order. This notification urged the Corps to suspend further consideration of Cogeneration's pending 404 certificate.

Cogeneration did not make the second security payment to Idaho Power on January 1, 1994. On January 3, Idaho Power issued notice to Cogeneration that it was in default of the Agreement, giving Cogeneration sixty days to cure. Cogeneration responded by invoking the Agreement's *force majeure* provision asserting that the DEQ unilaterally and arbitrarily revoked the project's 401 certificate, which in turn prevented Cogeneration from securing the financing necessary to post the security. On January 7, 1994, a meeting was held among Idaho Power, Cogeneration and Calpine. Cogeneration and Calpine indicated that the security would be

paid if Idaho Power acknowledged that the certification problems constituted events of *force majeure*. Idaho Power replied that the security would have to be paid first, and then it would evaluate the issue of *force majeure*. Calpine was not willing to advance funds toward the venture on Cogeneration's behalf without assurance that Idaho Power would acknowledge the certification problems to be an event of *force majeure*. Cogeneration itself, did not have the financial resources to satisfy the security. No payment of the security was made.

### B. Procedural Background

In December 1994, Idaho Power petitioned the Idaho Public Utilities Commission (IPUC) and sued Cogeneration in district court seeking a declaration in each case that Cogeneration had defaulted on the Agreement because of delinquency in posting the security.

Idaho Power first pursued proceedings before the IPUC where Cogeneration requested a declaration that an event of *force majeure* had occurred. The IPUC ordered Cogeneration to post the second installment of the security by May 1, 1995. Both parties sought reconsideration. The IPUC declined to reconsider its earlier order, and declined to exercise jurisdiction to interpret and declare the parties' contractual obligations. Instead, it suggested that a state district court would be a more appropriate forum for the issues. Neither party appealed either IPUC order. Cogeneration did not deposit the second security installment.

The parties proceeded with suit in district court. Idaho Power asserted that Cogeneration's failure to comply with the IPUC's order put Cogeneration in default of the Agreement. The district court granted Idaho Power's motion for partial summary judgment holding that Cogeneration was in default of the Agreement by failing to comply with the IPUC order, regardless of whether an event of *force majeure* had occurred. Cogeneration appealed.

The Supreme Court in *Idaho Power Co. v. Cogeneration Inc.*, 129 Idaho 46, 921 P.2d 746 (1996) (*Cogeneration I* ), vacated the district court's decision, holding that the IPUC order did not prevail over the Agreement's *force majeure* clause and therefore, the failure to post the security within the period specified in the IPUC order was not a material breach of the Agreement. 129 Idaho at 49, 921 P.2d at 749. The Court further held that issues of fact remained as to whether an event of *force majeure* had occurred. *Id.*

On remand, Cogeneration moved for partial summary judgment arguing that the undisputed affidavits supported a showing that an event of *force majeure* had occurred. The district court denied the motion holding that it could not conclude that the events, as a matter of law, were events of *force majeure*.

At trial, Cogeneration moved for involuntary dismissal following Idaho Power's case-in-chief arguing that no evidence had been presented to support Idaho Power's claim. The district court, sitting without a jury, agreed that sufficient testimony had not been placed on the record to support Idaho Power's claim but denied the motion to dismiss and granted Idaho Power's motion to re-open its case because of legal confusion and legitimate misunderstandings surrounding the effect on the record of an appeal to the Supreme Court, and prior summary judgment proceedings.

Cogeneration again moved for involuntary dismissal after Idaho Power rested for the second time, arguing that the additional proffered evidence was still insufficient to support Idaho Power's claim. The district court denied Cogeneration's second motion to dismiss.

At the close of all the evidence, Cogeneration renewed its motion for dismissal. The district court denied the motion.

At the close of trial, the district court held that the actions of the government agencies, in revoking and suspending the required permits, were events of *force majeure* with respect to the construction and operational obligations under the Agreement but not with respect to the financial and security obligations. The court also held that Cogeneration was not excused from its obligation to make the security deposit on January 1, 1994, and because its failure to do so was not cured within the time permitted after notice

of default, it was in breach of contract, entitling Idaho Power to enforce the termination provisions of the contract. Cogeneration appeals.

## II.

## ISSUES ON APPEAL

1. Whether the district court erred in denying Cogeneration's motion for partial summary judgment.

2. Whether the district court erred in granting Idaho Power leave to reopen its case.

3. Whether the district court erred in denying Cogeneration's first motion to dismiss.

4. Whether the district court erred in denying Cogeneration's second motion to dismiss.

5. Whether the district court erred in ruling that the *force majeure* clause did not apply to financial and security obligations.

6. Whether the district court erred in finding that Cogeneration did not have its financing lined up.

7. Whether the district court erred in ruling that Cogeneration could acquire financing without Idaho Power's acknowledgment of the *force majeure* clause.

8. Whether the district court erred in ruling that Idaho Power did not breach its contractual obligation of good faith and fair dealing.

## ISSUE ON CROSS APPEAL

1. Whether the district court erred in denying Idaho Power's request for attorney fees.

## III.

## STANDARD OF REVIEW

■ This Court exercises free review over the district court's conclusions of law. As a result, this Court may substitute its view for that of the district court on a legal issue. *See Marshall v. Blair,* 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). However, this Court's review of findings of fact is limited.

It does not weigh the evidence as the district court did; instead, it inquires as to whether the findings of fact are supported by substantial and competent evidence and therefore not clearly erroneous. *See Viebrock v. Gill,* 125 Idaho 948, 951, 877 P.2d 919, 922 (1994); I.R.C.P. 52(a).

## IV.

## ANALYSIS

### A. This Court Will Not Review The District Court's Interlocutory Order Denying Cogeneration's Motion For Partial Summary Judgment.

■ Cogeneration asks this Court to determine whether the district court erroneously denied its motion for partial summary judgment. However, an order denying a motion for summary judgment is not a final order and a direct appeal cannot be taken from it. Moreover, an order denying a motion for summary judgment is not to be reviewed on appeal from a final judgment. *See Bowles v. Pro Indiviso, Inc.,* 132 Idaho 371, 376, 973 P.2d 142, 147 (1999); *Watson v. Idaho Falls Consol. Hospitals,* 111 Idaho 44, 46, 720 P.2d 632, 634 (1986); *Evans v. Jensen,* 103 Idaho 937, 941, 655 P.2d 454, 458 (Ct.App.1982). The final judgment in a case can therefore be tested upon the record made at trial, not the record made at the time summary judgment was denied. *See Evans,* 103 Idaho at 942, 655 P.2d at 459.

Accordingly, we decline review of the district court's denial of Cogeneration's motion for partial summary judgment.

### B. The District Court Did Not Err In Granting Idaho Power Leave To Reopen Its Case.

■ Cogeneration asserts that the district court erred in allowing Idaho Power to reopen its case and introduce additional evidence. This Court has recognized the power of a district court to reopen a case prior to final judgment. *See Davison's Air Service, Inc. v. Montierth,* 119 Idaho 967, 968, 812 P.2d 274, 275 (1991). Such action may be taken by the court on motion of a party or on the court's own motion. *See Bonner County*

*v. Dyer,* 92 Idaho 699, 702, 448 P.2d 986, 989 (1968). However, a party seeking to reopen must show some reasonable excuse, such as oversight, inability to produce the evidence, or ignorance of the evidence. *See Smith v. Smith,* 95 Idaho 477, 481, 511 P.2d 294, 298 (1973). Cogeneration asserts that the district court erred because Idaho Power did not make a showing sufficient to trigger the authority of the district court to exercise its discretion. We disagree.

At the close of Idaho Power's case-in-chief, Cogeneration moved for involuntary dismissal stating that there had been no evidence introduced by Idaho Power indicating that the terms of the Agreement had been breached. Idaho Power argued that based upon the prior summary judgment proceedings and the Supreme Court opinion in *Cogeneration I,* the record from those proceedings was the law of the case and part of the record in the present case. The district court disagreed, stating that Idaho Power was required to make an internally consistent, complete record from "the ground up" without reference to prior proceedings.

Upon Idaho Power's motion, the district court granted leave to reopen the case stating as a basis for its exercise of discretion, legal confusion and legitimate misunderstandings surrounding the effect on the record of an appeal to the Supreme Court, judicial admissions by Cogeneration pertaining to non-payment, and prior summary judgment proceedings.

■ The decision whether to reopen a case and receive additional evidence before final judgment involves an exercise of discretion and will not be disturbed absent a showing that such discretion was abused. *See Seubert Excavators, Inc. v. Eucon Corp.,* 125 Idaho 409, 416, 871 P.2d 826, 833 (1994). On review, this Court must determine whether the lower court correctly perceived the issue as one of discretion, whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices, and whether the court reached its decision by an exercise of reason. *See id.*

Here, the district court properly perceived its decision to grant Idaho Power leave to reopen its case as one of discretion. It does not appear that the district court acted outside the boundaries of its discretion or that it acted contrary to applicable legal standards as this Court has recognized the power of a district court to reopen a case prior to final judgment. Finally, it appears that the court reached its decision in a reasonable manner. Specifically, it appears reasonable, given the confusion surrounding what evidence existed in the record by virtue of a prior motion for summary judgment and appeal to the Supreme Court, that omission of relevant evidence had occurred and that the reopening of Idaho Power's case would best effectuate a fair adjudication of the parties' dispute.

Accordingly, we hold that the confusion surrounding what evidence was already on the record was sufficient to constitute the requisite oversight and trigger the district court's authority to exercise discretion in reopening the case.

## C. The District Court Did Not Err In Denying Either of Cogeneration's Motions For Dismissal.

■ Idaho Rule of Civil Procedure 41(b) provides in relevant part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts *may* then determine them and render judgment against the plaintiff or *may* decline to render any judgment until the close of all the evidence.

I.R.C.P. 41(b) (emphasis added). The power to decline to render judgment at the close of the plaintiff's case is therefore within the discretion of the trial court. *See Bartlett v. Peak,* 107 Idaho 284, 285, 688 P.2d 1189, 1190 (1984); *Miller Const. v. Stresstek,* 108 Idaho 187, 190, 697 P.2d 1201, 1204 (Ct.App.1985). In reviewing an exercise of discretion, this Court must consider (1) whether the trial court correctly perceived the issue as one of

discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *See Bowles v. Pro Indiviso, Inc.,* 132 Idaho 371, 375–76, 973 P.2d 142, 146–47 (1999); *Zaleha v. Rosholt, Robertson & Tucker, Chtd.,* 131 Idaho 254, 257, 953 P.2d 1363, 1366 (1998); *Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

### 1. The district court did not abuse its discretion in denying Cogeneration's first motion to dismiss.

At the close of Idaho Power's evidence, Cogeneration moved for involuntary dismissal pursuant to I.R.C.P. 41(b). Although the district court agreed that sufficient evidence to support Idaho Power's position had not been placed on the record, the court denied the motion to dismiss and granted Idaho Power leave to reopen its case. For the reasons set forth above pertaining to the lack of abuse of discretion by the district court in granting Idaho Power leave to reopen its case, we hold that the district court did not abuse its discretion in denying Cogeneration's first motion for involuntary dismissal.

### 2. The district court did not abuse its discretion in denying Cogeneration's second motion to dismiss.

#### a. Idaho Power has not waived this issue on appeal.

Cogeneration asserts that because Idaho Power did not address this issue in its brief as required by I.A.R. 35(b)(6), this Court must reverse the district court's decision because Cogeneration's assignment of error goes unrebutted. We disagree.

The Idaho Appellate Rules require that a respondent's brief shall contain:

[T]he contentions of the respondent with respect to the issues presented on appeal, the reason therefore, with citations to the authorities, statutes and parts of the transcript and record relied upon.

I.A.R. 35(b)(6). This rule is identical to I.A.R. 35(a)(6) relating to an appellant's brief for which it has been held that non-compliance with the rule constitutes a waiver of that assignment of error. *See Estes v. Barry,* 132 Idaho 82, 87, 967 P.2d 284, 289 (1998); *Weaver v. Searle Bros.,* 129 Idaho 497, 503, 927 P.2d 887, 893 (1996). Though the language is identical, Cogeneration misinterprets the application and effect each rule has on an appeal.

The reasoning behind finding waiver due to an appellant's failure comply with I.A.R. 35(a)(6) lies in the fact that it is the appellant who has asserted error on the part of the district court. Absent compliance with the rules, this Court will not search the record for error. Error is never presumed on appeal and the burden of showing it is on the party asserting it. *See Woods v. Crouse,* 101 Idaho 764, 765, 620 P.2d 798, 799 (1980). In contrast, the respondent bears no such burden. The appellate rules are designed to facilitate thorough adjudication of relevant issues; and, although arguments made by the respondent would further those ends, this Court must make an independent determination of whether the appellant has carried its burden sufficiently to show that error has occurred. The respondent bears no such burden. Accordingly, we hold that Idaho Power's failure to address this issue in its brief does not mandate reversal of the district court's ruling.

#### b. The district court did not abuse its discretion.

Cogeneration asserts that in denying Cogeneration's second motion for involuntary dismissal at the close of Idaho Power's reopened case, the district court abused its discretion because no evidence was placed on the record by Idaho Power indicating breach of contract. Specifically, Cogeneration asserts that the only evidence on the record at the close of Idaho Power's case was "the uncontroverted testimony that Cogeneration had tendered the money pursuant to the Agreement but that Idaho Power refused it."

I.R.C.P. 41(b) provides that the power to decline to render judgment at the close of the plaintiff's case is within the dis-

cretion of the trial court. When an action is tried to a court without the benefit of a jury, determination as to credibility of witnesses, weight to be given their testimony, its probative effect and inferences and conclusions to be drawn therefrom, are all matters within the province of the trial court. *See Isaacson v. Obendorf*, 99 Idaho 304, 308, 581 P.2d 350, 354 (1978). This Court will look to all of the evidence and not merely the evidence introduced as part of the plaintiff's case if the defendant, after denial of his motion for dismissal made at the close of the plaintiff's case, introduces evidence in support of his case and renews such motion at the close of all the evidence. *See Pollard v. Land West, Inc.*, 96 Idaho 274, 279, 526 P.2d 1110, 1115 (1974) (quoting WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2371 p. 221 (1971)).

▮ After being allowed to reopen its case, Idaho Power elicited testimony that the security was not paid by January 1, 1994, that the failure to pay was not cured within the specified time after notice of default, and that the tender of payment was conditioned on Idaho Power's recognizing that an event of *force majeure* had occurred. At the second close of Idaho Power's case, the district court, denying Cogeneration's second motion for involuntary dismissal, ruled that the evidence indicated Cogeneration's offer of the security was conditioned on Idaho Power's recognition of an event of *force majeure* and therefore did not legally constitute a tender.

Cogeneration's president, Steve Harmsen, testified that at the time of trial, the security still had not been paid. Harmsen went on to testify that the tender was conditioned on Idaho Power recognizing that an event of *force majeure* had occurred.

▮ The district court's factual determination is supported by substantial and competent evidence and will not be disturbed on appeal. Likewise, it does not appear that the district court abused its discretion in denying Cogeneration's second motion to dismiss. Acting within the bounds of its discretion, the district court correctly reasoned that Cogeneration's offer of payment of the security did not constitute a tender because it was not unconditional. Tender is the unconditional

offer of a debtor to the creditor of the amount of his debt. *See Dohrman v. Tomlinson*, 88 Idaho 313, 318, 399 P.2d 255, 258 (1965) (quoting *Kelley v. Clark*, 23 Idaho 1, 129 P. 921 (1912)).

Based on the foregoing, we hold that the district court did not abuse its discretion in denying Cogeneration's second motion for involuntary dismissal.

**D. The District Court Properly Ruled That Cogeneration Was Not Excused From Its Obligation To Post The Security By January 1, 1994.**

Cogeneration frames its issue on appeal as whether the district court erred in finding that the *force majeure* clause did not apply to financial and security obligations. However, in its briefing, Cogeneration raises a myriad of arguments asserting more broadly that the district court erred in finding Cogeneration was not excused from its obligation to post the required security by January 1, 1994. Because the statement of issues presented on appeal will be deemed to include every subsidiary issue fairly comprised therein, our analysis will encompass all relevant arguments raised by Cogeneration. *See* I.A.R. 35(a)(4).

**1. The dispositive issue is whether Cogeneration was excused from its failure to perform under the Agreement.**

Cogeneration asserts that there was no proof in the trial record indicating that it was in breach of contract. The thrust of Cogeneration's argument is that since an event of *force majeure* occurred, its obligation to post the security was suspended and never came due. Therefore, Cogeneration argues, it did not breach the Agreement by failing to pay Idaho Power on January 1, 1994. We find this argument unpersuasive.

▮ A breach of contract is non-performance of any contractual duty of immediate performance. *See Enterprise, Inc. v. Nampa City*, 96 Idaho 734, 740, 536 P.2d 729, 735 (1975) (quoting RESTATEMENT OF THE LAW OF CONTRACTS § 312 (1932)). It is a failure, without legal excuse, to perform any promise, which forms the whole or part of a contract.

*See Hughes v. Idaho State University,* 122 Idaho 435, 437, 835 P.2d 670, 672 (Ct.App. 1992) (quoting BLACK'S LAW DICTIONARY 188 (6th ed.1990)). The burden of proving the existence of a contract and fact of its breach is upon the plaintiff, and once those facts are established, the defendant has burden of pleading and proving affirmative defenses, which legally excuse performance. *See O'Dell v. Basabe,* 119 Idaho 796, 813, 810 P.2d 1082, 1099 (1991).

Here, it is undisputed that the Agreement obligated Cogeneration to tender the second security deposit to Idaho Power on or before January 1, 1994 and that Cogeneration did not perform this obligation when due. Therefore, the key issue presented by Cogeneration is whether the district court erred in concluding that Cogeneration was not excused from its non-performance.

> **2. The district court did not err in ruling that Cogeneration was not excused from its obligation to tender the security because the *force majeure* clause did not apply to the financial and security obligations of the agreement.**

Cogeneration asserts that the district court erred in finding the operation of the *force majeure* clause did not apply to Cogeneration's financial and security obligations under the Agreement. In particular, Cogeneration argues that the district court "refused to adopt the Supreme Court's view of the law of the case from *Cogeneration I,*" and that the acts of civil authority affected Cogeneration's ability to post the security under the Agreement.

> **a. The district court did not err in interpreting *Cogeneration I.***

Cogeneration argues that the district court erred in failing to recognize the Supreme Court's statement in *Cogeneration I* that "posting of the security is suspended for the duration of an event of *force majeure.*" *Idaho Power Co. v. Cogeneration, Inc.,* 129 Idaho 46, 49, 921 P.2d 746, 749 (1996). The district court stated in its earlier summary judgment opinion on this issue that the existence and extent of *force majeure* was not

before the Court in *Cogeneration I,* and the portion of the opinion relied upon by Cogeneration was therefore dictum, leaving all issues surrounding the existence and defenses of *force majeure* to be litigated.

We agree that the issue of whether an event of *force majeure* affected Cogeneration's financial and security obligation was not foreclosed by our opinion in *Cogeneration I.* The district court correctly perceived the relevant portion of our opinion in *Cogeneration I* as dictum since the issue of the effect of *force majeure* on Cogeneration's financial and security obligations under the Agreement was not an issue properly before the Court at that time and was not essential to the ultimate disposition of that case. Therefore, we hold that the district court did not err in its interpretation or application of our ruling in *Cogeneration I.*

> **b. The district court did not err in ruling that acts of civil authority did not prevent Cogeneration from posting the required security within the prescribed time period.**

■ Cogeneration asserts that the acts of civil authority in revoking permits affected its ability to post the security under the Agreement and therefore constituted events of *force majeure* excusing or suspending its obligation to deliver the security to Idaho Power. We disagree.

The district court concluded that although the actions of government agencies in revoking and suspending the required permits and certificates were events of *force majeure* as applied to the obligations of the parties for construction and operation, they did not affect Cogeneration's physical ability to deliver the required security in a timely manner and did not relieve Cogeneration of its obligation to deliver the security to Idaho Power. As defined in relevant part by the Agreement:

> [*F* ]*orce majeure* or an event of *force majeure* means any cause beyond the control of the Seller or of Idaho Power which, despite the exercise of due diligence, such Party is unable to prevent or overcome, including but not limited to an act of God, fire, flood, explosion, strike, sabotage, an

act of the public enemy, **civil or military authority,** court orders, laws or regulations, insurrection or riot, an act of the elements or lack of precipitation resulting in reduced water flows for power production purposes. **If either party is rendered wholly or in part unable to perform its obligations** under this Agreement **because of an event of** *force majeure,* **both parties shall be excused from whatever performance is affected by the event of** *force majeure,* provided that:

. . .

(2) The suspension of performance shall be of no greater scope and of no longer duration than is required by the event of *force majeure.*

(emphasis added)

 Questions of contract interpretation and enforcement are normally the sole province of the courts. *See Afton Energy, Inc. v. Idaho Power Co.,* 122 Idaho 333, 337, 834 P.2d 850, 854 (1992). Interpretation and legal effect of an unambiguous contract are questions of law over which this Court exercises free review. *See Hanks v. Sawtelle Rentals, Inc.,* 133 Idaho 199, 202–03, 984 P.2d 122, 125–26 (1999); *First Security Bank of Idaho, N.A. v. Murphy,* 131 Idaho 787, 791, 964 P.2d 654, 658 (1998). In construing a written instrument, this Court must consider it as whole and give meaning to all provisions of the writing to the extent possible. *See Magic Valley Radiology, P.A. v. Professional Business Services, Inc.* 119 Idaho 558, 565, 808 P.2d 1303, 1310 (1991).

Looking at the plain language of the contract, the district court correctly interpreted the *force majeure* clause as excusing only those obligations affected by an event of *force majeure.* Based upon the record, ample evidence exists indicating that the obligation to pay the security was not directly affected by the revocation and suspension of the required permits and certificates since Cogeneration and its financial partner Calpine could have posted the security but chose not to. As was correctly pointed out by the district court in its memorandum decision, Cogeneration and Calpine may not have wanted to tender the security deposit without assurance that Idaho Power would recognize the occurrence of events of *force majeure,* but nothing prevented them from doing so. Cogeneration argues that business sense prevented it from posting the security, for had it tendered the security without acknowledgment of events of *force majeure* by Idaho Power, by the terms of the Agreement, Cogeneration would have forfeited the deposit when permitting delays prevented completion of the facility on time. We do not find this argument persuasive in light of the fact that had Cogeneration subsequently failed to complete the facility on time, it would have then been permitted to invoke the *force majeure* provision of the Agreement and excuse such breach, thereby avoiding forfeiture of its security deposit.

Accordingly, we hold that the acts of civil authority in revoking and suspending relevant permits did not prevent Cogeneration from posting the security deposit in a timely manner and therefore, such events did not constitute events of *force majeure* with respect to those obligations and did not excuse Cogeneration from performance.

3. **The district court did not err in ruling that Cogeneration was not excused from its obligation to tender the security because Idaho Power did not breach its contractual obligations.**

 Although the issue is not directly raised, Cogeneration appears to argue that Idaho Power's refusal to acknowledge the events of *force majeure* prior to Cogeneration's tender of the security constituted a breach of contract, which excused Cogeneration from performing its reciprocal obligation. Cogeneration asserts that because it was ready, willing and able to pay the security and made its performance conditioned on Idaho Power's recognition of events of *force majeure,* Idaho Power was obligated to honor Cogeneration's request and failure to do so constituted a breach of the Agreement. In support of its position, Cogeneration cites *Williams v. Havens,* 92 Idaho 439, 444 P.2d 132 (1968), for the proposition that "when a contract is still executory, a party who is ready, willing and able to perform may, by

giving notice to the other party requiring him to perform within a reasonable time, make such performance a condition of his own further necessary performance." This argument is flawed for two reasons.

Cogeneration misstates and misapplies the language of *Williams*. In *Williams*, this Court stated that "when a contract is still executory, a party *who is not in default*, and who is ready, able and willing to perform may, by serving notice on the other party requiring him to perform within a reasonable time, make such performance a condition of his own further necessary performance." 92 Idaho at 443, 444 P.2d at 136 (emphasis added). Thus, the rule in *Williams* applies only to a situation where the party seeking assurance is not in default. Here, at the time it sought assurance, Cogeneration was already in default of the Agreement by failing to tender the security on January 1, 1994. The Agreement states that "an event of default" occurs where "either Party fails to perform any of the terms or conditions of [the] Agreement...." Idaho Power was therefore under no obligation to acknowledge Cogeneration's condition of performance and did not commit a breach for failure to do so.

Additionally, Cogeneration misapplies the rule of *Williams* to a situation where the duty of performance is not simultaneous. In *Williams*, a contract was entered into for the sale of land. The obligations under that contract were simultaneous. The contract stated that there was no obligation to convey the property until the purchase price had been paid in full. *Williams* represents a principle of contract law that applies only to situations where performances are to be exchanged simultaneously under reciprocal promises. In such a case, each party is entitled to refuse to proceed with that simultaneous exchange until he is reasonably assured that the other party will perform at the same time. RESTATEMENT (SECOND) OF CONTRACTS § 238 cmt. a. (1981). The situation in this case differs from that of *Williams* in that the respective dates of performance for Cogeneration and Idaho Power were not simultaneous. As the district court properly pointed out, Cogeneration's obligation to tender the security was due January 1, 1994,

while Idaho Power's obligation to acknowledge the events of *force majeure* was not due until the deadline for construction of the project on January 1, 1996.

Therefore, we hold that Idaho Power's refusal to acknowledge the occurrence of events of *force majeure* did not relieve Cogeneration of its obligation to tender the security.

### E. It Is Unnecessary To Address Cogeneration's Assignments Of Error As To Certain Findings Of Fact Made By The District Court.

█ Cogeneration assigns error to certain factual determinations made by the district court. Specifically, Cogeneration argues the district court erred in finding that Cogeneration could have obtained its financing without Idaho Power's acknowledgment of events of *force majeure* and that Cogeneration did not have its financing lined up. Without deciding whether error was committed, we hold that any error associated with these factual determinations would be harmless.

The Court at every stage of the proceeding must disregard any error or defect in the proceeding, which does not affect the substantial rights of the parties. *See* I.R.C.P. 61. Here, the rights of Cogeneration were not affected by any error the district court may have committed in determining that Cogeneration could have completed its financing without Idaho Power's acknowledgement of events of *force majeure* or that it did not have its financing lined up.

Whether Cogeneration had its financing lined up is immaterial to this appeal. The *force majeure* clause excuses only those obligations affected by an event of *force majeure*. Here, the record indicates that regardless of whether Cogeneration had its financing lined up, it was capable of tendering the security to Idaho Power. By failing to tender the security to Idaho Power without excuse, Cogeneration breached the Agreement. The result would be the same had the district court concluded that Cogeneration did have its financing lined up. Therefore, because Cogeneration's rights

would not be affected by a different result, any resulting error would be harmless.

Similarly, it makes no difference whether Cogeneration could have completed its financing without Idaho Power's acknowledgement of events of *force majeure*. Had the district court determined that Cogeneration could not have obtained financing in the wake of Idaho Power's refusal, Cogeneration would still not have been relieved of its obligations under the Agreement. As previously discussed, Idaho Power was under no obligation to acknowledge whether events of *force majeure* had occurred at the time payment was demanded.

Accordingly, we hold that any error committed by the district court with respect to factual determinations regarding the ability to obtain financing would be harmless.

### F. The District Court Did Not Err In Ruling That Idaho Power Did Not Breach Its Obligation Of Good Faith And Fair Dealing.

■■■ Cogeneration asserts that the district court erred in concluding that Idaho Power had not breached its implied obligation of good faith and fair dealing by refusing to acknowledge the occurrence of events of *force majeure* at Cogeneration's request. Specifically, Cogeneration asserts that no evidence was presented, and the district court made no findings of fact to support a conclusion that Idaho Power did anything to satisfy its covenant of good faith and fair dealing. We disagree.

■■■ The implied covenant of good faith and fair dealing is a covenant implied by law in the parties' contract. No covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties. *See First Security Bank of Idaho v. Gaige*, 115 Idaho 172, 176, 765 P.2d 683, 687 (1988); *Clement v. Farmers Ins. Exchange*, 115 Idaho 298, 300, 766 P.2d 768, 770 (1988) (an implied covenant of good faith and fair dealing cannot override an express provision in a contract). The covenant requires that the parties perform, in good faith, the obligations imposed by their agreement, and a violation of the covenant occurs only when

either party violates, nullifies or significantly impairs any benefit of the contract. *See Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 289, 824 P.2d 841, 863 (1991).

Under the express provisions of the Agreement, either party will be excused from performance of an affected obligation if an event of *force majeure* occurs. Here, the express provisions of the Agreement provided that Cogeneration was to post its second security deposit to Idaho Power by January 1, 1994, have construction of the facility completed by January 1, 1996, and begin operations by February 1, 1996. Because Cogeneration's performance was not due until January 1, 1996, Idaho Power's reciprocal duty to acknowledge excuse of that performance was likewise not due until January 1, 1996. To imply that Idaho Power was obligated to acknowledge an excuse of performance prior to the time performance was due would be contrary to the terms of the contract negotiated and executed by the parties. The record contains substantial, competent evidence that Idaho Power complied with its obligations under the Agreement. Though it would have been a friendly gesture to comply with Cogeneration's request, Idaho Power's refusal to do so was not a breach of its implied covenant of good faith.

We therefore affirm the district court's ruling and hold that Idaho Power did not breach its implied covenant of good faith and fair dealing by refusing to acknowledge excused performance due to an event of *force majeure*.

### G. Idaho Power Has Waived Its Right To Appeal The District Court's Denial Of Attorney Fees.

■■■ On cross-appeal, Idaho Power assigns error to the district court's denial of its request for attorney fees. Cogeneration asserts that Idaho Power has waived this assignment of error by failing to comply with I.A.R. 34. We agree.

The Idaho Appellate Rules require that an appellant's brief be filed and that it·state the issues presented upon appeal, the contentions of the appellant with respect to the issues presented on appeal, the reason there-

for, with citations to the authorities, statutes and parts of the transcript and record relied upon. *See* I.A.R. 34, 35. Absent compliance with these rules, the Court will not search the record for error. *See Woods v. Crouse,* 101 Idaho 764, 765, 620 P.2d 798, 799 (1980).

In its brief, Idaho Power states that its cross-appeal for denial of attorney fees will be addressed in a brief in support of cross-appeal. This Court has not received such a brief and Idaho Power's assignment of error has not been supported by argument within the time period required by the appellate rules. We therefore hold that Idaho Power has waived this issue on appeal.

## V.

## CONCLUSION

Accordingly, we affirm the district court's ruling that Cogeneration breached its contractual obligations with Idaho Power. In so ruling, we hold that the district court's findings of fact and conclusions of law were not clearly erroneous and that the district court did not abuse its discretion in denying Cogeneration's motions for involuntary dismissal and granting Idaho Power leave to reopen its case. We deny Idaho Power's cross-appeal and award costs on appeal to Idaho Power.

Justices SCHROEDER and WALTERS and Justices Pro Tem LANSING and KERRICK concur.