108 P.3d 355

**Thomas MILLER, Plaintiff–Respondent,**

v.

**ESTATE OF Wid J. PRATER, and Susan Lewis, as the personal representative of the Estate of Wid J. Prater, Defendants–Appellants.**

**No. 29541.**

Supreme Court of Idaho,
Boise, January 2005 Term.

Feb. 22, 2005.

Perkins Coie, LLP, Boise, for appellants. Shelley H. Cozakos argued.

White, Peterson, Morrow, Gigray, Rossman, Nye & Rossman, P.A., Nampa, for respondent. William A. Morrow argued.

JONES, Justice.

This is an action for breach of a contract made by a married couple for disposition of the survivor's estate. Thomas Miller (Miller) brought suit against the survivor's estate, claiming violation of the agreed disposition provisions. The district court entered judgment in favor of Miller upon jury verdicts (1) finding the survivor's estate liable for breaching the contract and (2) awarding damages. The estate appealed, claiming the district court erred in denying its motion for summary judgment and in allowing the jury to determine the amount of damages. This Court affirms the determination of liability but reverses with regard to the issue of damages. The case is remanded with instructions as to the determination of the issue of Miller's monetary entitlement.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Wid and Bernice Prater were married in 1974. Wid had two adult children from a previous marriage, Karen McGrath and Michael Prater. Bernice also had two adult children from a previous marriage, Susan Lewis and Miller.

In 1975, Wid and Bernice entered into a contract (Contract), whereby they agreed to leave their entire estates to each other in consideration for their mutual promises that neither would alter the ultimate disposition of their property equally among their four children, upon the death of the survivor. The Contract made reference to contemporaneously executed wills but no such wills have been produced. The parties further agreed that (1) any property then or thereafter held by them as joint tenants, either with each other or with any of their children, and (2) the proceeds of any accounts or insurance policies on which any of their children were designated as beneficiaries, would also be distributed to the four children in equal shares. The four children signed the Contract to acknowledge this understanding. In 1981, Wid and Bernice executed wills that divided Michael Prater's one-fourth share equally between him and his daughter, Danielle Prater, so each would receive 12.5 percent of the survivor's estate. Otherwise, the distribution scheme remained intact. In 1984, Wid and Bernice, who then resided in the state of Washington, entered into a Community Property Agreement (Agreement), which classified all of the property owned by them as community property. The Agreement provided that all such property was to go to the survivor in fee simple. It contained no provisions relating to their wills or to the ultimate disposition of the survivor's estate.

Bernice passed away in 1993 and her 1981 will was probated. Wid remarried in 1996. On October 28, 1996, he established a revocable trust (Trust) and executed a will leaving the remainder of his estate to the Trust. The Trust called for distribution of the corpus in generally the same manner as provided for in 1981 will, as did three subsequent amendments, dated April 22, 1999, January 20, 2000, and November 29, 2000. On February 28, 2001, Wid executed a new will, which again left the remainder of his estate to the Trust, along with a fourth amendment to the Trust, which substantially changed the distribution scheme. Wid died on March 17, 2001 and thereafter a probate was initiated for the 2001 will.

On November 21, 2001, Miller filed a Complaint in district court against Wid's estate and its personal representative, Susan Lewis (collectively the Estate), alleging breach of the Contract. In August 2002, the Estate filed a motion for summary judgment, arguing the 1981 will and/or Agreement rescinded, cancelled or abandoned the 1975 Contract. The district court denied the motion, finding a genuine issue of material fact as to whether the terms of the Agreement revoked the disposition provisions of the Contract.

A telephonic pretrial conference was held on January 27, 2003. The substance of the conference was reduced to a Pretrial Order

dated January 28, 2003. In the Pretrial Order, the trial judge provided that the only issue for the jury was to decide whether the Contract was revoked or abandoned. The disbursement amounts were to be determined in the pending probate. The trial judge changed that ruling on the first day of a four-day jury trial, which took place in February of 2003. The judge bifurcated the trial into two phases—the first to determine liability and the second to determine damages, if applicable. On February 5, the jury returned a verdict in favor of Miller, finding the Contract had been breached. In the second phase the jury awarded Miller $124,000 in damages. A Judgment was entered on the jury verdicts on February 26, 2003. Miller sought costs and attorney fees and was awarded costs. An Amended Judgment was entered on May 23, 2003. The Estate timely appealed, arguing it was error to deny the motion for summary judgment and to allow the jury to determine the amount of Miller's damages. Both parties seek attorney fees on appeal.

## II.

## ANALYSIS

■ The issues raised by the Estate are matters of law. This Court exercises free review over matters of law. *Iron Eagle Dev., L.L.C. v. Quality Design Sys., Inc.*, 138 Idaho 487, 491, 65 P.3d 509, 513 (2003).

### A. This Court Declines Review Of The District Court's Denial Of The Estate's Motion For Summary Judgment.

The Estate asks this Court to hold the district court erred in denying its motion for summary judgment. Miller contends that an order denying a motion for summary judgment cannot be considered on appeal.

The Idaho Supreme Court has consistently held that an order denying a motion for summary judgment is not to be reviewed on appeal from a final judgment. *Gunter v. Murphy's Lounge, LLC*, 105 P.3d 676 (2005); *Courtney v. Big O Tires, Inc.*, 139 Idaho 821, 823, 87 P.3d 930, 932 (2003); *Hunter v. State, Dept. of Corrections*, 138 Idaho 44, 47, 57

P.3d 755, 758 (2002); *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 743, 9 P.3d 1204, 1209 (2000); *Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 376, 973 P.2d 142, 147 (1999); and *Watson v. Idaho Falls Consol. Hospitals*, 111 Idaho 44, 46, 720 P.2d 632, 634 (1986). We recently reiterated the rationale for this rule in *Gunter v. Murphy's Lounge, LLC*, as follows:

[B]y entering an order denying summary judgment, the trial court merely indicates that the matter should proceed to trial on its merits. The final judgment in a case can be tested upon the record made at trial, not the record made at the time summary judgment was denied. Any legal rulings made by the trial court affecting that final judgment can be reviewed at that time in light of the full record. This will prevent a litigant who loses a case, after a full and fair trial, from having an appellate court go back to the time when the litigant had moved for summary judgment to view the relative strengths and weaknesses of the litigants at that earlier stage. Were we to hold otherwise, one who had sustained his position after a fair hearing of the whole case might nevertheless lose, because he had failed to prove his case fully on the interlocutory motion.

*Id.* at 686. (citing *Keeler v. Keeler*, 124 Idaho 407, 410, 860 P.2d 23, 26 (Ct.App.1993)). In *Gunter*, this Court further noted, "It would be unjust to allow appellate reconsideration of the motion when a jury has made a determination of the case on the merits." *Id.*

■ The Estate contends that there is an exception under Idaho law where the summary judgment involved only issues of law. However, the Estate cites no persuasive authority for this contention. And, the contention is in error because material factual issues precluded summary judgment.

The Estate asserts that, since the Agreement was made while the parties were residing in the State of Washington, the district court should have applied Washington law to determine whether the Agreement conflicted with and rescinded the Contract. Had the court done so, the Estate argues, it would have determined, as a matter of law, that the Contract was rescinded. However, under

the law of either Washington or Idaho, the question of whether the later contract rescinded the earlier contract was a factual issue properly submitted to the jury. The courts of both states apply general rules of contract interpretation in determining the intent of contracting parties where a later agreement made by them appears to be in conflict with an earlier one.

In *Higgins v. Stafford*, 123 Wash.2d 160, 866 P.2d 31 (1994), the Washington Supreme Court was considering the effect of subsequently executed mutual wills on an earlier community property agreement. The court reviewed a number of previous decisions and determined that there must be a demonstration of a mutual intent to do so in order for a later instrument to rescind an earlier one. *Id.* at 35. General rules of contract interpretation are applied. *Id.* If there is no ambiguity on the issue, it may be decided as a matter of law. However, if an inconsistency between the instruments creates an ambiguity, a factual inquiry is required to determine the intent of the parties. *Id.*

The analysis under Idaho is similar. This Court held in *Silver Syndicate, Inc. v. Sunshine Min. Co.*, 101 Idaho 226, 235, 611 P.2d 1011, 1020 (1979), that the earlier and later instruments must be read and construed as one in order to determine the intent of the parties, utilizing rules of construction applying to the interpretation of a single contract. *Id.* If the composite contract is ambiguous, extrinsic evidence is appropriate in order to determine the true intent of the parties. *Id.* at 236, 611 P.2d at 1021.

Here, the district court properly determined that a factual issue existed as to whether the parties intended the Agreement to revoke the Contract. The 1975 Contract did not address the issue of ownership of any of the property of the contracting parties. Both owned separate property when they were married in 1974. Nevertheless, they agreed that all of their property, regardless of how it was owned or held, should be divided equally among their four children. They also agreed that such equal division of property would be applied (1) to any proper-

ty they then or thereafter owned as joint tenants, either with each other or with any of the children, and (2) to the proceeds of any accounts or insurance policies they then or thereafter owned on which any of the children was listed as beneficiary. Each of the four children signed the Contract to acknowledge this provision. The parties clearly intended to provide for an equal division of all property then owned or thereafter acquired so that it would ultimately be disposed of equally to the four children upon the death of the survivor. On the other hand, the Agreement dealt only with the question of how the parties' property would be owned or held. It made no mention of insurance policies or accounts on which the children may have been listed as beneficiaries or of property held in joint tenancy. It was not signed by the children, as was the Contract. It made no reference to any testamentary instrument and it made no provision for the disposition of the parties' property upon the death of the survivor. There was clear ambiguity between the two instruments and good reason for the district court to submit the matter to the jury for determination. In the special verdict form, the jury was asked whether the Contract had been rescinded, cancelled, revoked or abandoned, and it responded in the negative. The issue was not subject to determination as a matter of law, and we find no error in the trial court's handling of the matter of liability. Since the Estate has not appealed issues related to the liability phase of the trial, we will not consider the determination of its liability.

**B. The Damage Award Must Be Reversed.**

Following the jury's determination that the Estate was liable for breaching the Contract, the issue of damages was tried and submitted for decision by the jury. The Estate objected to having the matter determined in the breach of contract action, contending that the judge in the pending probate had exclusive jurisdiction to determine Miller's entitlement. On the other hand, Miller contended that the district court had exclusive jurisdiction over contract damages. The jury returned a damage verdict for Miller in the sum of $124,000. On appeal, the

Estate asserts the district court erred in having the jury, rather than the judge in the probate, determine Miller's entitlement from the Estate. We agree.

The Estate argues that I.C. § 15–3–105 gives the court handling a probate exclusive jurisdiction to determine any estate beneficiary's entitlement. This section provides, in pertinent part, that the "court has exclusive jurisdiction of formal proceedings to determine how decedent's estates subject to the laws of this state are to be administered, expended and distributed." The Estate argues that the judge in the probate was best positioned to determine the gross amount of the estate, the expenses chargeable against Miller's one-fourth share, and the net amount to which Miller was entitled.

On the other hand, Miller contends that the judge handling a probate proceeding does not have jurisdiction to entertain an action involving the breach of a contract to make a will or devise, citing *In Re Isaacson's Estate*, 77 Idaho 12, 285 P.2d 1061 (1955). In *Isaacson* the probate court had determined that the execution of a joint will and the receipt of benefits thereunder by the survivor created an irrevocable contract, rendering a later will invalid. This Court determined that:

> The issues of whether such an irrevocable contract exists and the enforcement thereof are matters to be tried out in a court of equity, and are beyond the equitable powers of the probate court in probate matters.

*Id.* at 15, 285 P.2d at 1063. Thus, Miller argues, the damage issue could only be decided in district court.

What Miller overlooks is that Idaho adopted the Uniform Probate Code (Code) in 1971. The Code provided the court handling a probate with wide ranging powers to determine contested matters, such as that involved in this case. I.C. § 15–3–104 provides that, "No proceeding to enforce a claim against the estate of a decedent or his successors may be revived or commenced before the appointment of a personal representative." I.C. § 15–1–201(5) defines "claims" to include liabilities of the decedent "whether arising in contract, in tort or otherwise ..."

As pointed out by the Estate, I.C. § 15–3–105 provides the "court" with exclusive jurisdiction of "formal proceedings" to determine how decedent's estates are to be "expended and distributed." According to I.C. § 15–1–201, formal proceedings are those conducted before a judge with notice to interested persons. I.C. § 15–3–106 provides catch-all authority for the court to determine any other controversy to which an estate may be a party, covering any matters not addressed in I.C. §§ 15–3–104 and 105. Necessarily included in such matters are contracts to make a will or devise, which are specifically addressed in I.C. § 15–2–701.

In considering these Code provisions, it is clear that the court handling a probate has jurisdiction to determine the existence and enforcement of a contract to make a will or devise. These Code provisions have rendered ineffective any contrary language in *Isaacson*. This does not necessarily mean, however, that the judge in a probate proceeding has exclusive jurisdiction of these matters. I.C. § 15–1–201(6) defines "court" as follows:

> 'Court' means the court or branch having jurisdiction in matters relating to the affairs of decedents, minors, incapacitated and disabled persons. This court in this state is known as the district court.

The question of whether a district judge or magistrate judge should determine issues relating to a contract to make a will or devise is not so much a matter of jurisdiction as it is of assignment. I.C. § 1–2208(2) allows for the assignment to magistrate judges of proceedings in the probate of wills and administration of estates of decedents. I.R.C.P. 82(c)(1)(A) provides for the jurisdiction of magistrate judges in such matters. The upshot is that both district judges and magistrate judges have "jurisdiction" to entertain actions for the enforcement or breach of contracts to make wills or devises. Since magistrate judges have been assigned responsibility for probate proceedings, all matters related to decedent's estates should first be considered and determined by the magistrate judge in the probate proceeding. A reading of I.C. § 15–3–105 indicates this to

be the legislative intent. It also makes practical sense.

While the parties to this proceeding agreed, by virtue of the jury's finding of liability, that Miller was entitled to a one-fourth share of the Estate, there was substantial disagreement as to how that amount was to be determined, what expenses should be deducted, whether attorney fees incurred by the Estate in this action could be properly considered as a deduction under I.C. § 15–3–720, and how any amount of damages determined by the jury might affect other Estate beneficiaries. The jury instructions provide little edification in this regard and it is likely that the jury was somewhat confused. It arrived at a damage figure almost exactly halfway between the differing amounts proposed by Miller and the Estate.

While it is clear that the district court had jurisdiction to consider and determine the issue of liability on the breach of contract claim, neither party has raised on appeal the question of whether or not the liability issue should have been considered in the first instance by the judge in the probate proceeding by virtue of the assignment of these matters to the magistrate division. However, the issue of the propriety of allowing the jury to decide the issue of damages is before the Court. Again, it is not a matter of jurisdiction but of proper assignment of the issue. Were the jury to have been provided with all of the pertinent information necessary to make the decision regarding the amount of Miller's entitlement, there might be some inclination by this Court to allow the determination to stand. However, the district court and parties mistakenly believed that the Contract contained provisions relating to the determination of Miller's entitlement and there was confusion regarding what expenses, particularly attorney fees, could be deducted from his share. The wisdom of placing the responsibility of allowing the judge handling the probate to determine how the estate should be expended and distributed is clear from the missteps below.

The trial judge and parties considered the following language in the Contract to be pertinent in determining the amount of Estate expenses to be assessed against Miller's one-fourth share:

> To further clarify (sic) our agreement, it is understood that with respect to properties that are now, or may in the future be, held in our names and in the names of one or more of our children, as joint tenants, and with respect to the proceeds from certain accounts and insurance policies under which one or more of our children have been designated as beneficiaries, that the time that said joint tenancies were created or said beneficiary designations made, we had an understanding with the child who was named as joint tenant or designated as beneficiary that the properties which such child would acquire at the time of our deaths by virtue of the joint tenancy or because of such beneficiary designation shall be held in trust by that child to first pay all of our debts, expenses of our last illness, funerals and burials, and that any amounts remaining after said payments are made shall be distributed in equal shares to our four children, KAREN LEE McGRATH, MICHAEL WID PRATER, SUSAN KAY LEWIS and THOMAS JAMES MILLER.

All concerned interpreted this language to mean that "our debts, expenses of our last illness, funerals and burials," were the items to be considered by the jury in determining the deductions to be applied against the gross estate in order to determine the amount of Miller's one-fourth share. However, it is obvious from a reading of this language that it applies only to joint tenancy property and to accounts and insurance policies under which any of the children is designated as beneficiary. It was not intended to apply to estate property generally.

The parties hotly disputed the question of whether "debts" included attorney fees, particularly attorney fees incurred by the Estate in defending this case. The parties submitted their conflicting positions regarding the attorney fee issue to the jury, as well as disagreements regarding the gross amount of the Estate, whether the monthly fees of Susan Lewis as trustee of the Trust should or should not be deducted and if so how much, and whether or not taxes should or should

not be deducted. It is no wonder that the jury decided to merely split the difference.

The judge handling the probate is best positioned to determine the net share of any estate beneficiary, considering all expenses, the overall scheme of distribution, and the effect of one beneficiary's entitlement upon that of the others. By following the intent of the applicable statutes and rules pertaining to assignment of probate proceedings to the magistrate division, the confusion can be averted or alleviated. Since this preferred scheme was not followed and since the determination of Miller's entitlement from the Estate was the product of confusion, the damage determination is reversed.

### C. Neither Party Is Entitled To Attorney Fees On Appeal.

The Estate requests attorney fees pursuant to I.A.R. 41. Idaho Appellate Rule 35(a)(6) requires appellant's arguments to contain "citations to the authorities, statutes and parts of the transcript and record relied upon." If an appellant fails to comply with this rule, this Court will not address the issue. *Samuel v. Hepworth, Nungester & Lezamiz, Inc.,* 134 Idaho 84, 90, 996 P.2d 303, 309 (2000); *Weaver v. Searle Bros.,* 131 Idaho 610, 616, 962 P.2d 381, 387 (1998). The Estate's brief states no more than the following in regards to attorney fees on appeal: "The Estate requests an award of attorney's fees on appeal pursuant to I.A.R. 41." Because the Estate does not provide argument on this issue as required by I.A.R. 35(a)(6), this Court declines to address the Estate's request for attorney fees on appeal.

Miller requests attorney fees pursuant to I.A.R. 41 and I.C. § 12–121. Miller argues this appeal was brought frivolously, unreasonable or without foundation, therefore entitling him to attorney fees on appeal pursuant to *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). It was not frivolous, unreasonable or without foundation to appeal the issue of damages as evidenced by the fact that the Estate prevailed on that issue. This Court denies Miller's request for attorney fees on appeal.

## III.

## CONCLUSION

The Court affirms the portion of the judgment holding the Estate liable for breaching the Contract. The damage portion of the judgment is reversed and the case is remanded to the district court with instructions to enter an appropriate amended judgment and certify the same to the judge handling the pending probate proceeding. The judge in the probate shall determine Miller's monetary entitlement, i.e. his one-fourth share of the estate, less properly chargeable expenses, including the amount of attorney fees, if any, that may be assessed as a proper estate expense.

Chief Justice SCHROEDER and Justices TROUT, BURDICK and EISMANN concur.