729 P.2d 400

**AFTON ENERGY, INC. Complainant,**

v.

**IDAHO POWER COMPANY, Respondent.**

**IDAHO POWER COMPANY, Appellant,**

v.

**AFTON ENERGY, INC. and Idaho Public Utilities Commission, Respondents.**

No. 16067.

Supreme Court of Idaho.

Dec. 2, 1986.

Jim Jones, Atty. Gen., Michael S. Gilmore, Deputy Atty. Gen., Idaho Public Utilities Com'n, Boise, for respondent, I.P.U.C.

David G. Gadda of Boise Cascade Corp., Boise, for amicus curiae Independent Power Producers Council, Inc.

Paul E. Levy of Levy Law Offices, Boise, for amicus curiae, Paul E. Levy.

Larry D. Ripley, Barton L. Kline, and Paul L. Jauregui of Evans, Keane, Koontz, Boyd & Ripley, Boise, for appellant, Idaho Power.

Owen H. Orndorff and Wayne L. Kidwell of Orndorff, Kidwell, MacConnell & Peterson, Boise, for respondent, Afton Energy, Inc.

DONALDSON, Chief Justice.

This appeal is a continuation of the proceedings previously considered by the Court in *Afton Energy, Inc. v. Idaho Power Company*, 107 Idaho 781, 693 P.2d 427 (1984) (*Afton I* and *Afton III*).[1] In that case, we affirmed an Idaho Public Utilities Commission (Commission) order that required Idaho Power to purchase power from Afton pursuant to a fixed-term contract. Now, Idaho Power is back before the Court seeking a modification of the

---

1. The original decision was issued on January 11, 1984. (*Afton I*). Idaho Power petitioned for a rehearing and the case was reargued. On July 12, 1984, a second opinion was issued (Afton II) modifying *Afton I.* Afton Energy then petitioned for a rehearing. On December 20, 1984, the Court withdrew Afton II, and issued a third opinion (*Afton III*). *Afton III* modified *Afton I* and became final without further petition.

Commission order to comply with our holding in *Afton I.* Before we address the issues presented in this appeal, a brief summary of the prior proceedings is needed to clarify the position of the parties.

## I

In 1978, Congress, to combat a nationwide energy shortage, enacted the Public Utility Regulatory Policy Act (PURPA). Specifically, § 210 (16 U.S.C. § 824a–3) and the related regulations thereto, require utilities to purchase power from qualifying co-generated small power producers (CSPPs) at the utility's avoided cost rates. Afton Energy, a CSPP located in Afton, Wyoming, unsuccessfully attempted to sell Idaho Power the output of its qualifying co-generation facility. After negotiations broke off, Afton filed a complaint with the Commission requesting the Commission to "immediately order Idaho Power to enter into the attached power sales agreement and to furthermore cooperate in good faith and in an expeditious manner to consummate the sale of its power to Idaho Power."

Idaho Power, by answer, denied that the Commission had jurisdiction to order it to enter into the contract attached to Afton's complaint because it was not freely negotiated. The Commission, in Order No. 17478, agreed with Idaho Power that it could not dictate contract terms, but did hold that it had the authority and duty under PURPA to require utilities to purchase power pursuant to firm agreements with the CSPPs. The Commission thereby ordered Idaho Power to "agree to purchase from Afton Energy, Inc., co-generated power in the amount and for the time period tendered by Afton at the avoided cost rate for Idaho Power Company...."

Idaho Power still disputed the legal authority of the Commission to make such an order. However, it complied and contracted to purchase power from Afton. The parties negotiated two payment options, the binding option dependent upon this Court's determination of the Commission's authority. Article IV of the contract defined the payment options. The first option provided that payments from Idaho Power would be fixed and would remain in full force and effect for the entire 35-year term of the contract. On the other hand, the second option provided that rates would be fixed for the first ten years of the contract only, and subsequently would allow for downward adjustment if Idaho Power's avoided cost rate should be reduced in the future.

Another clause, art. XIII, was entitled *Legal Disputes.* It provided that, if as a result of a legal determination, the Commission has authority to; (1) dictate rules, terms and conditions, or (2) order Idaho Power to enter into contracts, then the first payment option is in effect. Otherwise, the second payment option will be binding on the parties.

Idaho Power submitted its compliance filing to Order No. 17478. The filing recited that "there remains a legal dispute between Idaho and Afton but such dispute has not prevented the execution of the contract." In Order No. 17495, the Commission approved the contract, including both payment options, but refused to declare which option is binding. The Commission announced that in keeping with its policy it will not dictate the terms of individual contracts. The Commission stated:

"No further purpose would be served by keeping the legal dispute alive under these circumstances. The Commission finds that the public interest would not be compromised by either of the two alternatives sketched in the Power Sales Agreement. The result is an extremely cumbersome contract that apparently serves the needs of these two parties. It certainly has no precedential value in dealing with other parties. In keeping with our policy announced repeatedly in past Commission orders, we will not dictate the terms of individual contracts and such individually negotiated contracts shall be respected and approved to the extent that they do not violate the public interest. The Power Sales Agreement between Afton and Idaho Power is therefore approved as filed with either or both

of the alternatives spelled out in Articles IV and XIII."

Public Utilities Commission Order No. 17495, p. 5.

Idaho Power appealed to this Court, raising the issue of whether the Commission had jurisdiction to order Idaho Power to enter into the contract with Afton. We held that the Commission did indeed have the authority to do so and affirmed Order Nos. 17478 and 17495. *Afton Energy, supra* at 789, 693 P.2d at 435. Our Afton III opinion clarified the standard of review to be utilized by the Commission when reviewing the contract. We held that the Commission should apply the fair, just and reasonable standard in a manner not inconsistent with the federal law. *Afton Energy, supra* at 793, 693 P.2d at 439.

## II

The present proceeding was initiated by Idaho Power when it moved the Commission to modify Orders Nos. 17478, 17495 and 17609[2] to conform to the Afton I/III decision and declare the second payment option of the contract in effect. Apparently, Idaho Power interpreted Afton I/III as ruling in its favor and selecting its preferred payment option. The Commission, reading the motion as a contract interpretation request, dismissed it, holding that the district court is the proper forum to interpret contracts. Idaho Power petitioned for a rehearing, which was denied by the Commission. This appeal has followed.

Idaho Power wants us to determine whether our Afton I/III decision dictated the payment option which allows for downward adjustment of the rates to be binding on the parties. We refuse to do so and affirm the decision of the Commission.

It is important to note what relief Idaho Power is asking for. They entered into a contract with Afton to buy power. The agreement contained two alternative payment options, the binding alternative to be chosen based on a certain legal determina-

tion. Now, Idaho Power wants the Commission to interpret the contract and find that, based on our Afton I/III decision, its preferred payment option is in effect. As such, it requests the Commission to modify a previous order directing Afton to comply with the contract as interpreted by Idaho Power.

■ The Commission generally has jurisdiction to hear matters presented to it regarding the regulation and supervision of public utilities. I.C. § 61–501. *Grever v. Idaho Telephone Company,* 94 Idaho 900, 499 P.2d 1256 (1972). But the Commission's jurisdiction is limited and has to be found entirely in the enabling statutes. *Arrow Transportation Company v. Idaho Public Utilities Commission,* 85 Idaho 307, 379 P.2d 422 (1963). Specifically, the Commission has no jurisdiction to take away a utility's freedom of contract (so long as the contract is not inimical to the public interest) and must consider private contracts when involved in the rate-making process. *Agricultural Products v. Utah Power & Light,* 98 Idaho 23, 557 P.2d 617 (1976). As such, the interpretation of contracts, as a general rule, does not fall within the Commission's jurisdiction. *Lemhi Telephone Company v. Mountain States Telephone & Telegraph Co.,* 98 Idaho 692, 571 P.2d 753 (1977); *Bunker Hill Co. v. Washington Water Power Co.,* 101 Idaho 493, 616 P.2d 272 (1980). As this Court stated in *Lemhi:*

"Generally, construction and enforcement of contract rights is a matter which lies in the jurisdiction of the courts and not in the Public Utilities Commission. This is true notwithstanding that the parties are public utilities or that the subject matter of the contract coincides generally with the expertise of the commission. If the matter is a contractual dispute, it should be heard by the courts." *Id.* at 696, 571 P.2d at 757.

---

**2.** Commission Order No. 17609 denied Idaho Power's Petition for Rehearing on Order Nos. 17478 and 17495.

■ The Court has recognized exceptions to this rule. In *Bunker Hill Co. v. Washington Water Power Co., supra,* we allowed the Commission to interpret an unprecise contract because "the parties agreed to let the PUC settle this dispute and since there is substantial evidence in the record to support the commission's decision...." *Bunker Hill Co. v. Washington Water Power Co.,* 98 Idaho 249, 252, 561 P.2d 391, 394 (1977). Additionally, the Commission can use its expertise and supply a reasonable contract rate where the parties have an existing contract but are unable to agree to the specific rate. *F.M.C. Corp. v. Idaho Public Utilities Commission,* 104 Idaho 265, 658 P.2d 936 (1983). Here, however, the contract between Afton and Idaho Power does not fall within any of the exceptions. Idaho Power and Afton have not agreed to allow the Commission to interpret the contract. The contract, while being complex, does not require any particular expertise in the rate-making area to interpret the disputed provision, and the parties have agreed that one of two alternative rates is applicable.

Idaho Power certainly has a right to a legal determination of the disputed contract provision. However, it chose the wrong forum to settle the dispute. The district court, and not the Commission, is the proper body to entertain this suit.

■ This is not to say that the Commission can never modify the terms of the contract. The state, through the Commission, has the right to regulate public utilities. As this Court stated many years ago:

"It is held uniformly and universally that the power to supervise and regulate rates or charges for services rendered by public utilities is an inherent function of government, and occupies a large place within the domain of the police powers of the state." *Sandpoint Water & Light Co., Ltd., v. City of Sandpoint,* 31 Idaho 498, 501, 173 P. 972, 973 (1918).

Also in discussing the police power we have stated more recently:

"Pursuant to that power, it has been settled that the state may fix rates for a public utility service which will supersede rates previously fixed by private contract. Interference with private contracts by the state regulation of rates is a valid exercise of the police power, and such regulation is not a violation of the constitutional prohibition against impairment of contractual obligations. [Citation omitted.] A Public Utility Commission may thus annul or supersede contract rates between utilities and their customers. [Citations omitted.] Private contracts with utilities are regarded as entered into subject to reserved authority in the state to modify the contract in the public interest." *Agricultural Products v. Utah Power & Light Co.,* 98 Idaho 23, 29, 557 P.2d 617, 623 (1976).

A public utility has the right to enter into a private contract but the state can modify that contract when it falls outside the parameters of an appropriate standard. The appropriate standard for review of contracts between public utilities and small power producers was set forth in our Afton I/III decision. As we stated there:

"An agreement such as one entered into between Afton Energy and Idaho Power, while not constituting a tariff, is a special type of contract. The Commission should apply the fair, just and reasonable standard, in a manner not inconsistent with the federal law to the extent that it may be applicable, to determine whether the rates need to be adjusted in this particular type of contract. In making this determination, the Commission must consider the effect of the contract on the utility, its stockholders and customers and the benefits to the utility power supply system which may be realized through the development of co-generation facilities. We emphasize, however, that whether the rate paid by the utility is fair, just and reasonable is not dependent upon the profit or loss realized by the co-generator at any given time." *Afton Energy, supra* 107 Idaho at 793, 693 P.2d at 439.

■ Accordingly, Idaho Power, or Afton for that matter, may file an application

**930**

with the Commission requesting that the contract be modified to satisfy the requirements of the *Afton I/III* standard. However, before the Commission can modify the contract, it must use the test set out in *Afton I/III* and repeated above. It must balance the effect the contract has on the financial condition of the utility, its stockholders and customers, with the benefits to the utility power supply system as a whole. After applying this process, and finding that the contract is not fair, just and reasonable, the Commission may amend the contract by order.

We would like to emphasize that Idaho Power is not requesting contract modification based on the *Afton I/III* standard. It has simply asked the Commission, through a motion to modify a previous order, to declare that one of two freely negotiated payment options is in effect as selected by a legal determination of this Court. In other words, Idaho Power has asked for an interpretation of its contract. The district court is the proper forum for this action. We hold that the Commission acted properly when it dismissed Idaho Power's motion to modify previous orders.

Costs to respondent.

No attorney fees on appeal.

BAKES, BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, Justice, dissenting.

The majority states "[T]he parties negotiated two payment options, the binding option *dependent on this Court's determination of the Commission's authority.*" This Court has made its determination of the Commission's authority. I see no necessity to "interpret" the contract. Its language is clear and the only question is whether this Court's decision has triggered one or the other of the options. Even assuming that "interpretation" of a court is necessary, I deem it a waste of resources to require intervention of a district court with a resultant appeal to this Court. Neither do I see any "modification" of the contract as an issue. The contract is agreed upon by its parties, and again, the only question appears to be which option has been triggered.

The majority makes reference to the Court's previous decisions in this matter wherein the Commission in ruling upon modification of a contract was directed to utilize a fair, just and reasonable standard *not inconsistent with federal law.* Clearly, the Commission has the authority and expertise to determine if a utility contract is "fair, just and reasonable," but I perceive no authority in the Commission to interpret federal law or determine if federal law has preempted the field, or the extent of that preemption.