132 P.3d 442

**Joseph B. McNEAL, d/b/a Pagedata, Petitioner–Appellant,**

v.

**IDAHO PUBLIC UTILITIES COMMISSION and Qwest Corporation, Respondents.**

No. 31844.

Supreme Court of Idaho, Boise, February 2006 Term.

March 22, 2006.

Joseph B. McNeal, pro se appellant.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent Idaho Public Utilities Commission. Donovan E. Walker argued.

Batt & Fisher LLP, Boise, for respondent Qwest Corporation. John R. Hammond, Jr. argued.

SCHROEDER, Chief Justice.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2003, Qwest and PageData jointly filed an application to adopt a previously approved Interconnection Agreement between Qwest and Arch Paging, which the Commission approved in Order No. 29198, issued on February 25, 2003. The Qwest–PageData Interconnection Agreement contained a dispute resolution provision at Section 13.14. The dispute provision provides:

*If any claim, controversy or dispute between the Parties, their agents, employees, officers, directors, or affiliated agents ("Dispute") cannot be settled through negotiation, it shall be resolved by arbitration under the then current rules of the American Arbitration Association ("AAA").* The arbitration shall be conducted by a single neutral arbitrator familiar with the telecommunications industry and engaged in the practice of law.... The Federal Arbitration Act, 9 U.S.C. Secs. 1–16, not state law, shall govern the arbitrability of all Disputes. The arbitrator shall not have authority to award punitive damages. All expedited procedures prescribed by the AAA rules shall apply and the rules used shall be those for the telecommunications industry. The arbitrator's award shall be final and binding and may be entered in any court having jurisdiction thereof. The prevailing Party, as determined by the arbitrator, shall be entitled to an award of reasonable attorneys' fees and costs. The arbitration shall occur at a mutually agreed upon location. *Nothing in this Section shall be construed to waive or limit either Party's right to seek relief from the Commission or the FCC as provided by state or federal law.*

(Emphasis added).

On October 31, 2003, PageData filed a complaint with the Commission alleging that Qwest was not in compliance with the reciprocal compensation provisions of the Qwest–PageData Interconnection Agreement. Qwest filed a limited response to PageData's complaint requesting that the Commission dismiss PageData's complaint because the dispute resolution provision in the parties' Interconnection Agreement called for arbitration. PageData filed a reply and subsequently filed a request for summary judgment. On January 19, 2005, the Commission issued Order No. 29687, in which it dismissed PageData's complaint determining that "the arbitration process is the first and foremost method for resolving disputes under the Interconnection Agreement."

PageData filed a Petition for Reconsideration in which it argued that the Commission's ruling makes the dispute resolution clause of the Interconnection Agreement unconscionable, asserting that the Commission should hold a hearing pursuant to I.C. § 28–2–302 so that the parties could present evidence on the issue of unconscionability. Further, PageData argued that there is no mechanism in Idaho statutes to incorporate a private AAA arbitration decision into filed interconnection agreements to make the decision publicly available to other carriers under Section 252(i) of the 1996 Telecommunications Act.

The Commission denied PageData's Petition for Rehearing, finding that I.C. § 28–2–302 is inapplicable because it grants jurisdiction to the courts, not the Commission; the interpretation of contracts generally lies with the courts and not the Commission; the arbitration clause in Section 13.14 is neither procedurally or substantively unconscionable;

and, the Commission found itself "unaware of any impediment why either party to the arbitration could not file such a decision as an amendment or clarification to their Interconnection Agreement." PageData appealed, maintaining that the Commission erred in granting the motion to dismiss and in "blue penciling" the Interconnection Agreement, asserting that Qwest is contractually bound to accept PageData's selected method of relief and that a hearing should have been conducted on the unconscionability of the arbitration clause.

## II.

## STANDARD OF REVIEW

 Article V, Section 9 of the Idaho Constitution provides this Court with jurisdiction to review any order of the Public Utilities Commission. The scope of the review is limited by I.C. § 61–629 which states in relevant part:

No new or additional evidence may be introduced in the Supreme Court, but the appeal shall be heard on the record of the commission as certified by it. The review on appeal shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the constitution of the United States or the state of Idaho. Upon the hearing the Supreme Court shall enter judgment, either affirming or setting aside in part the order of the commission.

With regard to questions of law review of Commission orders is limited to a determination of whether the Commission has regularly pursued its authority and whether the constitutional rights of the appellant have been violated. *In re Jay Hulet's Complaint Regarding Idaho Power Company's Irrigation Buy–Back Program,* 138 Idaho 476, 65 P.3d 498 (2003). With regard to questions of fact this Court will sustain the Commission's determinations unless it appears that the clear weight of the evidence is against its conclusions or that the evidence is strong and persuasive that the Commission abused its discretion. *Id.* Finally, "It is a well-settled rule that in an appeal from the commission matters may not be raised for the first time on appeal and that where the objections were not raised in the petition for rehearing, they will not be considered for the first time by this court." *Eagle Water Co. v. Idaho PUC,* 130 Idaho 314, 316–17, 940 P.2d 1133, 1135–36 (1997) (quoting *Key Transp., Inc. v. Trans. Magic Airlines Corp.,* 96 Idaho 110, 112–13, 524 P.2d 1338, 1340–41 (1974)).[1]

## III.

## THE COMMISSION HAS THE AUTHORITY, UNDER FEDERAL AND STATE LAW, TO INTERPRET AND ENFORCE INTERCONNECTION AGREEMENTS AND DID SO IN BOTH OF ITS ORDERS BEFORE THIS COURT

A threshold issue is whether the Commission has the authority to interpret and en-

---

1. In the briefs on appeal there has been some argument between PageData and the Commission as to the standard of review. PageData has made arguments to the effect that Commission orders are subject to de novo review when entities are deprived of their statutory rights. The Commission, however, has stated that: "Contrary to PageData's assertions, the Orders of the Commission are not subject to *de novo* review. PageData does not offer any authority for its position."

PageData is correct that a decision of a commission can be subject to *de novo* review—but not before this Court—it is before a federal court that a *de novo* standard is used. The Second Edition of the American Jurisprudence advises in its Telecommunications section:

Federal courts review de novo a decision of the state public utilities commission as to whether interconnection agreements between local ex-

change carriers comply with the Telecommunications Act and implementing regulations, and consider all other issues under an arbitrary and capricious standard. [FN9]

74 Am.Jur.2d Telecommunications § 26. As authority for this statement, American Jurisprudence cites to the following cases in Footnote 9:

*Southwestern Bell Telephone Co. v. Waller Creek Communications, Inc.,* 221 F.3d 812 (5th Cir. 2000); *Southwestern Bell Telephone Co. v. Public Utility Comm'n of Texas,* 208 F.3d 475 (5th Cir.2000); *US West Communications, Inc. v. Washington Utilities and Transp. Comm'n,* 255 F.3d 990 (9th Cir.2001); *US West Communications, Inc. v. Hamilton,* 224 F.3d 1049 (9th Cir.2000); as amended on reh'g, (Sept. 13, 2000); *Southwestern Bell Telephone Co. v. Brooks Fiber Communications of Oklahoma, Inc.,* 235 F.3d 493 (10th Cir.2000).

force interconnection agreements or whether such agreements are outside the scope of the Commission, subject only to interpretation and enforcement by the courts. Page-Data argues interconnection agreements may be interpreted and enforced by the Commission. Qwest argues to the contrary. The Commission agreed with Qwest. Federal law indicates that a Commission does have the authority to interpret and enforce an interconnection agreement: *In the Matter of Starpower Communications, LLC Petition for Preemption of Jurisdiction of the Virginia State Corporation Commission Pursuant to Section 252(e) of the Telecommunications Act of 1996*, 15 F.C.C.R. 11277, 11282, n. 13 (2000) (citing *Southwestern Bell Telephone Co. v. Public Utility Commission of Texas*, 208 F.3d 475 (5th Cir.2000)):

> [T]he Act's grant to the state commissions of plenary authority to approve or disapprove these interconnection agreements necessarily carries with it the authority to interpret and enforce the provisions of agreements that state commissions have approved.

Idaho case law indicates in general that contract interpretation is for the courts, not the Commission, but has not determined that interpretation and enforcement of an interconnection agreement is solely for the courts. The cases have been careful to use words such as "generally" and "normally" and also, to provide for exceptions to the norm. In *Lemhi Telephone Co. v. Mountain States Telephone & Telegraph Co.*, 98 Idaho 692, 696, 571 P.2d 753, 757 (1977), this Court stated: "Generally, construction and enforcement of contract rights is a matter which lies in the jurisdiction of the courts and not in the Public Utilities Commission." In *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 748, 9 P.3d 1204, 1214 (2000), this Court cited *Afton Energy Inc. v. Idaho Power Co.*, 111 Idaho 925, 929, 729 P.2d 400, 404 (1986), stating: "Questions of contract interpretation and enforcement are normally the sole province of the courts." Because of federal law interconnection agreements fall outside the norm.

In this case the Commission did interpret and enforce the Interconnection Agreement.

The Commission's decision contemplated what was meant by the word "shall" as it concerns arbitration and concluded that this was the "first and foremost" method of dispute resolution that the parties were to use.

■ Unfortunately, the provisions in Section 13.14 are inconsistent and defy rationalization. In the beginning arbitration is specified as the method of dispute resolution, followed by the contrary provision that, "Nothing in this Section shall be construed to waive or limit either Party's right to seek relief from the Commission or the FCC as provided by state or federal law." Neither party, nor the Court, has been able to give both of these provisions meaning without conflict with the other. The Commission found arbitration to be the first and foremost method of dispute resolution under the agreement, in effect interpreting the agreement despite language that contract interpretation is for the courts. This is one of the instances in which the Commission does have the right to interpret a contract.

■ In this instance the Commission's interpretation is the same as the Court's so far as determining that arbitration must be pursued first in the dispute resolution. While the last sentence of Section 13.14 would indicate to the contrary, the arbitration language is specific, extensive and mandatory. To rule otherwise would render that provision without meaning. The arbitration provision is mandatory, and to give it meaning it must remain mandatory. On the other hand there may be some residual meaning to the last sentence of Section 13.14 even if arbitration is mandatory. In the wake of arbitration there may be a role for the Commission to play in interpreting the agreement or determining whether the arbitration decision is consistent with federal and state regulation. The Commission and the Court's decision is not without logical difficulties, but it is the best that can be done with an agreement drafted as if no one read the paragraph from start to finish.

In view of the Court's conclusion that the Commission may have a role to play after arbitration an outright dismissal of PageData's claim was inappropriate. Further action on the claim should have been stayed rather

than dismissed. Whether there is a role for the Commission to play after arbitration is a question to be decided later, if necessary.

## IV.

## REMAINING ISSUES

There are other issues that have been raised.

### A. PageData's argument for use of the Idaho Rules of Civil Procedure is moot as it is being raised for the first time on appeal. Nevertheless, the Commission has its own rules of procedure.

 PageData argues that the Commission should have used the Idaho Rules of Civil Procedure. This argument may not be raised for the first time on appeal. *See Eagle Water Co. v. Idaho PUC*, 130 Idaho 314, 316–17, 940 P.2d 1133, 1135–36 (1997). Nevertheless, for clarity, I.C. § 61–601 states that: "All hearings and investigations before the commission or any commissioner shall be governed by this act and by rules of practice and procedure to be adopted by the commission...." The Commission has its own Rules of Procedure which addresses late filings and non-answers to complaints in the following manner:

A party that fails to answer a complaint or petition within the prescribed time will be treated as generally denying the allegations of the complaint or petition and will be precluded, except for good cause shown, from setting up any affirmative defense in the proceeding. In these cases, the Commission may proceed with the matter solely upon the issues set forth in the complaint or petition. The complainant or petitioner must offer evidence of its allegations regardless of whether the complaint or petition is answered or denied.

IDAPA 31.01.01.057.02(b). Finally, as stated in I.R.C.P. 1(a), the Idaho Rules of Civil Procedure apply to the courts, of which the Commission is not:

These [I.R.C.P.] rules govern the procedure and apply uniformly in the district courts and the magistrate's divisions of the

district courts in the state of Idaho in all actions ...

PageData's claim for application of the Rules of Civil Procedure in the Commission is without merit.

### B. There is no impediment to filing an arbitration decision.

 One of the bases upon which Page-Data resists arbitration is the claim that there is no authority to file an arbitration decision with the Commission, consequently precluding issues determined in it from being incorporated in this and other interconnection agreements. PageData has cited no Idaho statutes or case law as authority for its contention that there is an impediment to filing an arbitration decision, citing to prior orders of the Commission. However, "[b]ecause regulatory bodies perform legislative as well as judicial functions in their proceedings, they are not so rigorously bound by the doctrine of *stare decisis* that they must decide all future cases in the same way as they have decided similar cases in the past." *Rosebud Enterprises, Inc. v. Idaho PUC*, 128 Idaho 609, 619, 917 P.2d 766, 776 (1996) (citing *Intermountain Gas Co. v. Idaho PUC*, 97 Idaho 113, 119, 540 P.2d 775, 781 (1975)). In this case the Commission has explicitly stated that it knows of no impediment why PageData could not file such a decision. Therefore, PageData's argument concerning this sub-issue lacks merit.

### C. The Commission properly denied PageData's Petition for Reconsideration.

PageData argues that I.C. § 28–2–302 requires the Commission to convene a hearing so that the parties can present evidence regarding the unconscionability of the arbitration clause.

 When called upon to review legislation, this Court has stated: "The most fundamental premise underlying judicial review ... is that, unless the result is palpably absurd, the courts must assume the legislature meant what it said. Where a statute is clear and unambiguous the expressed intent of the legislature must be given effect." *State, Dept. of Law Enforcement v. One 1955*

*Willys Jeep,* 100 Idaho 150, 153, 595 P.2d 299, 302 (1979). Where a statute or constitutional provision is clear we must follow the law as written. *Moses v. State Tax Comm'n,* 118 Idaho 676, 799 P.2d 964 (1990); *State v. Ankney,* 109 Idaho 1, 704 P.2d 333 (1985); *Herndon v. West,* 87 Idaho 335, 393 P.2d 35 (1964); *John Hancock Mut. Life Ins. Co. v. Neill,* 79 Idaho 385, 319 P.2d 195 (1957). Where the language is unambiguous, there is no occasion for the application of rules of construction. *Airstream, Inc. v. CIT Financial Serv., Inc.,* 111 Idaho 307, 723 P.2d 851 (1986); *Ottesen v. Board of Comm'rs of Madison County,* 107 Idaho 1099, 695 P.2d 1238 (1985); *Worley Highway Dist. v. Kootenai County,* 98 Idaho 925, 576 P.2d 206 (1978).

 As stated in *Utah Power & Light Co. v. Idaho Public Utilities Comm'n,* 107 Idaho 47, 52, 685 P.2d 276, 281 (1984): "It has been firmly established that the PUC has no authority not given it by statute." Idaho Code § 28-2-302, cited by the Appellant before the Commission on Rehearing and before this Court on appeal, is a part of the Idaho Uniform Commercial Code and it provides:

(1) If the *court* as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the *court* that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

(Emphasis added). The Commission is not a "court": "[T]he commission is an arm of the legislative authority, and not a court of justice, within the meaning of Const. art. 1, § 18." *Natatorium Co. v. Erb,* 34 Idaho 209, 216, 200 P. 348, 350 (1921). The unambiguous language of I.C. § 28-2-302 specifies a situation in which a court—not the Commission—is to hear evidence regarding the unconscionability of a contract. Idaho Code § 28-2-302 is therefore inapplicable to the instant case. Regardless, the Commission has the authority to interpret whether the arbitration clause was unconscionable. *In the Matter of Starpower Communications, LLC Petition for Preemption of Jurisdiction of the Virginia State Corporation Commission Pursuant to Section 252(e) of the Telecommunications Act of 1996,* 15 F.C.C.R. 11277, 11279–80 (2000), the FCC stated:

[I]nherent in state commissions' express authority to mediate, arbitrate, and approve interconnection agreements under section 252 is the authority to interpret and enforce previously approved agreements ... due to its role in the approval process, a state commission is well-suited to address disputes arising from interconnection agreements.

PageData argues that: (1) "The Commission's ruling makes the dispute resolution clause (Section 13.14) of the interconnection agreement unconscionable. The Commission's ruling unreasonably limits PageData's choices for dispute resolution and significantly advantages Qwest." (2) "The IPUC made the arbitration clause procedurally unconscionable because the IPUC granted Qwest's motion to dismiss based on the arbitration clause without holding a hearing." It is difficult to connect these assertions to a claim of unconscionability. Nevertheless, the Commission interpreted the arbitration clause, finding it to be enforceable, distinguishing this Court's prior ruling in *Murphy v. Mid-West National Life Ins. Co.,* 139 Idaho 330, 78 P.3d 766 (2003). The Commission's points of distinction are well taken. The arbitration clause in this case does not mandate the oppressive costs in relation to the claim found in *Murphy.*

## V.

## QWEST IS NOT ENTITLED TO ATTORNEY FEES ON APPEAL

 This Court has stated that attorney fees will not be awarded where the losing party brought the appeal in good faith and where a genuine issue of law was presented. *Merrill v. Gibson,* 139 Idaho 840, 846, 87

P.3d 949, 955 (2004) (citing *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979)). There is no losing party; neither Qwest nor PageData has fully prevailed or lost. Also, PageData has raised genuine issues of law regarding the Commission's interpretation and enforcement of an interconnection agreement. Qwest was a participant in the drafting of this internally inconsistent agreement. To award it attorney fees for an argument that one inconsistent part of the agreement should prevail over another inconsistent part would add still another anomaly to this case, perhaps even encourage poor draftsmanship.

## VI.

## CONCLUSION

The Commission's decision that the Page-Data claim must go to arbitration is affirmed. The dismissal of the claim is vacated. The claim should be stayed pending the outcome of the arbitration which may include filing of the decision as an amendment to the interconnection agreement. Neither party is awarded costs or attorney fees.

Justices TROUT and BURDICK and Justices Pro Tem KIDWELL and SCHILLING concur.