Docket No. 40882-2013

| | | |
|---|---|---|
| IDAHO POWER COMPANY, | ) | |
| | ) | **Boise, April 2014 Term** |
| Petitioner-Respondent, | ) | |
| | ) | **2014 Opinion No. 49** |
| v. | ) | |
| | ) | **Filed: June 17, 2014** |
| NEW ENERGY TWO, LLC, an Idaho limited | ) | |
| liability company, and NEW ENERGY | ) | **Stephen W. Kenyon, Clerk** |
| THREE, LLC, an Idaho limited liability | ) | |
| company, | ) | |
| | ) | |
| Respondents-Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IDAHO PUBLIC UTILITIES | ) | |
| COMMISSION | ) | |
| | ) | |
| Intervenor-Respondent. | ) | |
| | ) | |

Appeal from the Public Utilities Commission of the State of Idaho.

The order of the Public Utilities Commission is affirmed.

Angelo L. Rosa, Salt Lake City, Utah, argued for appellants.

Donovan E. Walker, Boise, argued for respondent Idaho Power Company.

Donald L. Howell, II, Deputy Attorney General, Boise, argued for respondent Public Utilities Commission.

---

EISMANN, Justice.

This is an appeal from an order of the Idaho Public Utilities Commission holding that it had jurisdiction to decide whether the force majeure clauses in the Appellants' contracts with Idaho Power Company excused them from their contractual obligations to have their power generation facilities constructed and in operation by specified dates in order to sell electricity to Idaho Power. We affirm the order of the Commission.

# I.
## Factual Background.

On May 24, 2010, Idaho Power entered into two Firm Energy Sales Agreements, one with New Energy Two, LLC, and the other with New Energy Three, LLC, under which Idaho Power agreed to purchase electricity from them that was to be generated by the use of biogas. The agreement with New Energy Two stated that the project would be operational on October 1, 2012, and the agreement with New Energy Three stated that the project would be operational on December 1, 2012. Both contracts were submitted for approval to the Idaho Public Utilities Commission, and it approved them on July 1, 2010.

Each of the agreements contained a force majeure clause. By written notice dated September 28, 2012, New Energy Two and New Energy Three (collectively "New Energy") informed Idaho Power that they were claiming the occurrence of a force majeure event, which was ongoing proceedings before the Public Utilities Commission. New Energy asserted that until those proceedings were finally resolved "the entire circumstance of continued viability of all renewable energy projects in Idaho is undecided" and that as a consequence "renewable energy project lenders are unwilling to lend in Idaho pending the outcome of these proceedings."

On November 9, 2012, and November 21, 2012, respectively, Idaho Power filed petitions with the Commission against New Energy Two and New Energy Three seeking declaratory judgments that no force majeure event, as that term was defined in the agreements, had occurred and that Idaho Power may terminate both agreements for the failure of the projects to be operational by the specified dates. The Commission ordered that the two cases be consolidated into a single proceeding.

On December 27, 2012, New Energy filed a motion to dismiss both petitions on the ground that the Commission lacked subject matter jurisdiction to interpret or enforce contracts. After briefing from both parties, the Commission issued its order on March 5, 2013, denying New Energy's motion to dismiss. The Commission's order was an interlocutory order that is not appealable as a matter of right. New Energy filed a motion with this Court requesting a permissive appeal pursuant to Idaho Appellate Rule 12, and we granted the motion. New Energy then filed a notice of appeal.

## II.
### Did the Commission Err in Holding that It Had Subject Matter Jurisdiction to Adjudicate Idaho Power Company's Petitions?

The issue on appeal as stated by New Energy is "[w]hether the PUC has jurisdiction to adjudicate whether or not an event of force majeure excusing performance under certain contracts has occurred." "Idaho case law indicates in general that contract interpretation is for the courts, not the Commission . . . ." *McNeal v. Idaho Public Utilities Comm'n*, 142 Idaho 685, 689, 132 P.3d 442, 446 (2006). However, this Court's decisions "have been careful to use words such as 'generally' and 'normally' and also, to provide for exceptions to the norm," *id*., and this Court has recognized several exceptions to the general rule. One exception is that the Commission has authority to interpret contracts where the parties have agreed to permit the Commission to do so. *Bunker Hill Co. v. Washington Water Power Co*., 98 Idaho 249, 252, 561 P.2d 391, 394 (1977); *Afton Energy, Inc. v. Idaho Power Co*., 111 Idaho 925, 929, 729 P.2d 400, 404 (1986) (recognizing this rule). Although we have not explained the basis of this exception, it is obvious. "Freedom of contract is a fundamental concept underlying the law of contracts and is an essential element of the free enterprise system." *Rawlings v. Layne & Bowler Pump Co*., 93 Idaho 496, 499, 465 P.2d 107, 110 (1970). The parties to a contract can agree to the manner in which they will resolve disputes regarding the interpretation of their contract. Although they cannot require a third party to resolve their dispute, they can agree to permit a third party to do so.

Each of the agreements in this case included as section 19.1 a provision stating, "All disputes related to or arising under this Agreement, including, but not limited to, the interpretation of the terms and conditions of this Agreement, will be submitted to the Commission for resolution." The Commission held that by this provision, the parties had agreed to have the Commission resolve disputes regarding the interpretation of their agreements, including the meaning of the force majeure clause. New Energy does not even address section 19.1 in its briefing, nor does it dispute that the language of the provision would include determining whether the claimed force majeure was within the scope of the force majeure clause in the agreements. Therefore, the Commission did not err in holding that the interpretation of the agreements was within the scope of section 19.1.

The Commission also based its order upon decisions of this Court regarding the Commission's statutory authority. The agreements in this case were executed pursuant to the Public Utility Regulatory Policies Act of 1978 (PURPA), and the biogas generation facilities to be constructed by New Energy were to be qualifying facilities (QFs) under that act. The Commission wrote as follows:

> We further find that there is a statutory basis for our jurisdiction in this matter. Just as in the case where QFs may bring complaints against utilities under PURPA (*Afton I/III*, 107 Idaho at 781, 693 P.2d at 427), the Commission is authorized under *Idaho Code* § 61-621 to hear complaints made by public utilities. As the Idaho Supreme Court noted in *Afton I/III*, Section 61-612 "gives the Commission jurisdiction to hear complaints against public utilities alleging violations of rules, regulations or any provision of laws; I.C. § 61-502 gives the Commission jurisdiction to determine reasonable rates, including rates collected under contracts; and I.C. § 61-503 gives the Commission power to investigate a single contract . . . ." 107 Idaho at 784, 693 P.2d at 430. The PPAs at issue in this case directly affect Idaho Power's rates through the annual Power Cost Adjustment (PCA). *Idaho Code* § 61-502, *Kootenai*, 99 Idaho at 880, 591 P.2d at 127. The United States Supreme Court also noted in *FERC v. Mississippi*, PURPA "and the [FERC] implementing regulations simply require the [state regulatory] authorities to adjudicate disputes arising under [PURPA]. Dispute resolution of this kind is the <u>*very type of activity*</u> customarily engaged in by the Mississippi [Public Utilities] Commission . . . ." 456 U.S. 742, 760, 102 S.Ct. 2126, 2138 (1982) (emphasis added); *Afton I/III*, 107 Idaho at 789, 693 P.2d at 435 (emphasis original).

(Footnotes omitted.) New Energy did not address this analysis by the Commission.

In the Commission's above-quoted analysis, it noted the statement by the United States Supreme Court in *F.E.R.C. v. Mississippi*, 456 U.S. 742, 760 (1982), that PURPA "and the implementing regulations simply require the Mississippi [Public Utilities Commission] to adjudicate disputes arising under the statute." In *McNeal*, we held that because the Telecommunications Act of 1996 granted the Commission the authority to approve or disapprove the contract at issue, the Act necessarily granted the Commission the authority to interpret and enforce the provisions of the contract that it had approved. 142 Idaho at 689, 132 P.3d at 446. The agreements in this case had been approved by the Commission.

In *Empire Lumber Co. v. Washington Water Power Co.*, this Court stated:

> The Idaho Public Utilities Commission is the agency authorized and directed to supervise and regulate electrical utilities, and has ratemaking authority over such utilities. I.C. §§ 61–501, 61–129; *Grever v. Idaho Telephone Company*, 94 Idaho 900, 499 P.2d 1256 (1972). The Commission, as part of its statutory

4

duties, determines reasonable rates and investigates and reviews contracts. I.C. §§ 61–502, –503. The Commission also has jurisdiction to hear complaints against utilities alleging violation of any provision of law or of any order or rule of the Commission. I.C. § 61–612. *See*, *Afton Energy Inc. v. Idaho Power Company*, 111 Idaho 925, 729 P.2d 400 (1986). Thus, it is clear that the Idaho Public Utilities Commission is granted authority by the Idaho statutes to, and is the appropriate forum to resolve whether a co-generator or small power producer has satisfied the criteria for "qualified facility" status, and *to determine whether a regulated utility has an obligation under PURPA to purchase power from an applicant*.

114 Idaho 191, 192, 755 P.2d 1229, 1230 (1987) (emphasis added). The central issue in this case is a determination of whether Idaho Power still has an obligation under the two agreements to purchase power from New Energy.

We hold that the Commission did not err in holding that it had jurisdiction to determine whether or not an event of force majeure occurred that excused New Energy's performance under the two Firm Energy Sales Agreements at issue in this case.

### III.
### Conclusion.

We affirm the order of the Commission, and we award the Respondents costs on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**

5