**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50048**

| | | |
|---|---|---|
| In the Interest of: John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, DEPARTMNET OF HEALTH AND WELFARE, | ) ) | Filed: January 17, 2023 |
| | ) | |
| Petitioner-Respondent, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| v. | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| JANE DOE (2022-39), | ) | BE CITED AS AUTHORITY |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Anson L. Call, II, Magistrate.

Judgment terminating parental rights, affirmed.

David R. Martinez, Chief Bannock County Public Defender; Kent V. Reynolds, Deputy Public Defender, Pocatello, for appellant.

Hon. Raúl R. Labrador, Attorney General; Jason R. Chandler, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the magistrate court's judgment terminating her parental rights to her minor child. Mother asserts the court erred by concluding that she abandoned and neglected the child, terminating Mother's parental rights is in the child's best interests, and the Idaho Department of Health and Welfare (Department) met the requirements of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1963. Mother also argues the court abused its discretion by denying her motion to reopen the case following the termination hearing. We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On April 11, 2021, Mother gave birth to a child who was born prematurely and suffered from respiratory distress. After the child's birth, the Department petitioned under the Child Protection Act (CPA), Idaho Code §§ 16-1601-1647, for legal custody of the child. In its petition, the Department alleged Mother tested positive for methamphetamine and amphetamines at the time of the child's birth; the child likewise tested positive; and Mother initially refused to allow medical care providers to transfer the child to another medical facility to receive necessary, specialized care. The Department also moved to remove the child "from his home," although the child was still in neonatal intensive care at the time. On April 15, the magistrate court granted the Department's motion to remove the child, found he was an Indian child[1] of the Shoshone Bannock Tribes (Tribes) implicating the ICWA, and gave notice to the Tribes that the Department was seeking custody of the child.

In May 2021, the magistrate court held an adjudicatory hearing. Mother attended with her counsel, and the parties stipulated to the court's jurisdiction due to the "lack of a stable home environment." The court noted that the child's foster care placement did not comply with ICWA's preferences. Nevertheless, the parties agreed to the foster placement. Subsequently, the Tribes moved to intervene as a party in the case, and the court granted the Tribes' motion.

In June 2021, the Department notified the magistrate court of a change in the child's foster placement to a placement complying with ICWA. Also in June 2021, the court entered a case plan for Mother's performance. This plan required, among other things, that Mother demonstrate an ability to provide suitable housing for the child, allow the Department to complete a home check, engage in substance abuse treatment, demonstrate an ability to refrain from substance abuse, comply with drug testing, demonstrate an understanding of how Mother's substance abuse affected her mental health, and attend all scheduled visits with the child.

In March 2022, the Department moved for an order approving an adoptive placement for the child with a member of the Tribes, and the magistrate court granted that motion. Thereafter,

---

[1] Under the ICWA, an "Indian child" means any unmarried person who is under the age of eighteen years and is either (1) a member of an Indian tribe or (2) the biological child of an Indian tribe member and eligible for membership in tribe. 25 U.S.C. § 1903(4). The parties do not dispute that the child at issue in this case is an Indian child under the ICWA.

in April 2022, the court changed the permanency goal from reunification to termination and adoption. In May 2022, the Department petitioned to terminate Mother's parental rights and had her personally served with both the petition and a notice setting the termination hearing for July 29, 2022.

The termination hearing occurred as scheduled on July 29. Mother did not appear at the hearing, although her counsel did. Mother's counsel represented to the magistrate court that Mother had informed him earlier in the week that she intended to attend the hearing; he had no explanation for why she was not in attendance; and he was "ready to proceed" if she were present. Despite Mother's nonappearance, her counsel addressed the motions in limine he had filed on her behalf and occasionally objected to testimony, but otherwise, he repeatedly stated during the hearing that he was not taking an active role because of Mother's failure to appear.

At the termination hearing, the Department presented the testimony of the Department case manager, the Department case management specialist, an addiction counselor employed by the Tribes, and an ICWA expert. Additionally, the child's guardian ad litem testified. After the termination hearing concluded, Mother moved to "reopen" the case to permit her "to defend, [to] present testimony, to cross-examine testimony, and [to] submit evidence and documentation to challenge the alleged grounds justifying termination of her parental rights." The motion asserted Mother's failure to attend the termination hearing "was not due to neglect or wilful conduct" but rather "due to inability to appear and contest and present evidence." In support, Mother's counsel submitted an affidavit stating that, shortly after counsel left his office for the termination hearing, Mother left him a voicemail message at the office stating, "she would not be able to attend the trial because she did not have any 'gas money, a ride, or nada.'" Further, Mother's counsel attested that, if he had received Mother's message before the termination trial, he would have asked for a continuance.

The magistrate court denied Mother's motion to reopen the case and entered written findings of fact and conclusions of law terminating her parental rights. The court concluded that Mother abandoned the child by "failing to maintain a normal parental relationship with the child" and neglected the child by "failing to provide proper parental care and control, subsistence, and medical care necessary for the [child's] well-being" and that terminating Mother's parental rights is in the child's best interests. The court further concluded the Department met the ICWA requirements for terminating parental rights, including that "the Department made active efforts

3

throughout the child protective case to avoid the breakup of the Indian family" and that "there is proof beyond a reasonable doubt that the reunification would likely result in serious emotional or physical damage to the child." Accordingly, the court entered the judgment terminating Mother's parental rights.[2]

Mother timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143

---

[2] The magistrate court also terminated the parental rights of the child's father. The father's rights, however, are not at issue in this appeal.

Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

### A. Neglect

Mother challenges the magistrate court's conclusion that she neglected the child under I.C. § 16-2005(1)(b).[3] In the court's decision, it noted two, alternative definitions of neglect. First, a parent neglects a child if the child "is without proper parental care and control or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents." I.C. § 16-1602(31)(a). Second, a parent neglects a child if the parent is "unable to discharge [her] responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety, or well-being." I.C. § 16-1602(31)(b).

After noting these definitions of neglect, the magistrate court concluded that "Mother neglected the [child] by failing to provide proper parental care and control, subsistence, and medical care necessary for the [child's] wellbeing since his birth." In support, the court found that Mother "has not played a consistent or active role in the case throughout its existence"; "has been inconsistent in her visitation, drug testing, and treatment"; "has not bonded with the [child] and has not demonstrated appropriate responses" when visiting the child; has "consistently refused to

---

[3] Mother also argues substantial and competent evidence does not support the magistrate court's purported conclusion that "Mother was and will be unable to 'discharge parental responsibilities . . . for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child,'" citing I.C. § 16-2005(1)(d). The court, however, did not rely on this statutory basis to terminate Mother's parental rights, so we do not address this argument.

5

allow the Department access to her residence to evaluate it for appropriateness"; and "suffers from the delusion that the [child] has a twin," whom the Department is purportedly hiding from her, demonstrating a lack of "capacity to apprehend reality to a degree necessary to care for the [child]."

Mother characterizes these findings as "conclusionary [sic] statements" which are not supported by sufficient evidence. We disagree. A review of the record shows substantial and competent evidence supports the magistrate court's conclusion that Mother neglected the child. For example, the addiction counselor testified that she had evaluated Mother twice and recommended her for treatment but that she had not "followed through with any of her treatment." The Department case manager likewise testified that Mother had not engaged in substance abuse or mental health treatment and had not demonstrated an ability to refrain from substance abuse. Further, the case manager testified Mother had attended only "approximately 60 percent of her visitation" with the child, failed to demonstrate "appropriate reactions to things during visits [with the child regarding his] safety, well-being, and his development," and does not share a bond with the child.

The case manager also testified Mother refused to allow the case manager to enter Mother's home to determine its appropriateness for the child. Regarding this refusal, the Department case management specialist testified she attempted an estimated "seven or eight times" to access Mother's home to determine its appropriateness for the child but was not allowed to enter the home. Further, the case management specialist testified that Mother only attended approximately half of the scheduled visits with the child, did not have a substantial connection with the child, and had not taken advantage of mental health services that were offered.

Based on this testimony and other evidence, we hold that substantial and competent evidence supports the magistrate court's conclusion that Mother neglected the child. *See, e.g.*, *State, Dep't of Health & Welfare v. Doe* (2019-32), 166 Idaho 173, 177-78, 457 P.3d 154, 158-59 (2020) (recognizing that, among other things, unstable housing and substance abuse support finding of neglect). Although some of the testimony identified above relates to Mother's failure to comply with certain requirements in her case plan, her failure to comply with provisions in the case plan supports a finding of neglect. *See Idaho Dep't of Health & Welfare v. Doe (2011-02)*, 151 Idaho 356, 364, 256 P.3d 764, 772 (2011) (holding definitions of neglect in I.C. § 16-1602(31) "are certainly broad enough to encompass the consideration of the parent's compliance with a case plan as evidence to support a finding of neglect"). Because we hold that substantial and competent

evidence supports the magistrate court's conclusion that Mother neglected the child under I.C. § 16-2005(b), we do not reach the issue of whether Mother abandoned the child under I.C. § 16-2005(a). When a trial court relies on alternative, statutory grounds to terminate parental rights, this Court may disregard any error in relying on one ground if the Court can sustain the judgment on the other ground. *Doe v. Doe*, 159 Idaho 461, 464, 362 P.3d 536, 539 (2015).

**B.    ICWA**

Mother also argues the magistrate court erred by concluding the "ICWA requirements were established beyond a reasonable doubt." The ICWA addresses the concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions." 25 U.S.C. § 1901(4). Accordingly, the ICWA requires the trial court to make additional findings beyond those the CPA requires, including under 25 U.S.C. §§ 1912(d) and (f).[4] Where an Indian child is the subject of a termination proceeding, the court must find the parent's continued custody of the child is likely to result in serious emotional or physical damage to the child, which finding must be supported by the testimony of an ICWA expert and evidence beyond a reasonable doubt. 25 U.S.C. § 1912(f). Additionally, the party seeking to terminate the parental rights must "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts proved unsuccessful." 25 U.S.C. § 1912(d); *see also Idaho Dep't of Health & Welfare v. Doe*, 157 Idaho 920, 933, 342 P.3d 632, 635 (2015) (discussing ICWA requirements). "Whether the trial court correctly applied ICWA to the facts of this case is a question of law and is subject to free review by this Court." *Doe v. Roe*, 127 Idaho 452, 456, 902 P.2d 477, 481 (1995). "[T]he trial court's finding of adequate

---

[4]    The Fifth Circuit Court of Appeals has held that provisions of the ICWA, including 25 U.S.C. § 1912(d) and (f), are unconstitutional. *Brackeen v. Haaland*, 994 F.3d 249, 268 (5th Cir. 2021) (en banc), *cert. granted*, ___ U.S. ___, 142 S. Ct. 1204 (Feb. 28, 2022). The United States Supreme Court granted certiorari in *Brackeen* and heard oral arguments in November 2022, but it has not yet issued an opinion. The parties in this case, however, do not challenge either the applicability or the constitutionality of any ICWA provision. For this reason, even assuming the Supreme Court were to conclude provisions of the ICWA are unconstitutional, such a decision would not affect this case's resolution. Rather, it would only make Mother's arguments under the ICWA moot. Accordingly, staying this expedited case for the Supreme Court's decision in *Brackeen* is unnecessary.

remedial efforts [required by the ICWA] must be supported by substantial and competent evidence to endure on appeal." *Id*. at 458, 902 P.2d at 483.

At the termination hearing in this case, the Department presented the testimony of an ICWA expert, and the Tribes stipulated to her qualifications as an expert. The expert testified that the Department engaged in efforts to reunite the family, including case planning; attempting to connect the parents with the child; reaching out to the child's other family members; and offering services to Mother, including visitation, transportation, and mental health and substance abuse services. The expert testified that the Department's efforts were unsuccessful in reuniting the family because of the parents' "lack of participation."[5]

Further, the ICWA expert opined that the "continued custody of the [child] in [Mother's] care is likely to result in serious emotional or physical damages." In support, the expert identified Mother's drug and alcohol abuse, the "inconsistency of care" for herself, her home instability, and the prior termination of her parental rights to other children. Based on this testimony "as well as the testimony of other witnesses," the magistrate court found that the Department "made efforts throughout the child protective case to avoid the breakup of the Indian family" and that "there is evidence beyond a reasonable doubt that the reunification would likely result in serious emotional or physical damage to [the child]."

On appeal, Mother raises numerous challenges to these findings. First, Mother challenges the ICWA's expert testimony because the expert failed to "conduct[] any investigation of her own" and instead "merely regurgitated the information provided by [the Department] and the Tribal social services." Under Idaho Rule of Evidence 703, however, an expert witness may rely on facts and data in the case of which the expert is aware, including inadmissible evidence. *See, e.g.*, *Herrett v. St. Luke's Magic Valley Reg'l Med. Ctr., Ltd.*, 164 Idaho 129, 136, 426 P.3d 480, 487 (2018) (noting rule permits expert to rely on records and consultation with others who reviewed records). Mother fails to articulate how the ICWA expert's reliance on the records in this case did not comport with Rule 703.

---

[5] Although Mother's counsel chose not to cross-examine the ICWA expert because of Mother's absence from the termination hearing, counsel for the child's father did cross-examine the expert.

Second, despite Mother's challenge to the ICWA expert's reliance on Department records, Mother conversely challenges the expert for not reviewing the Department's visitation and monthly narrative notes, which Mother contends "detail" her "regular and consistent contact" with the child. In asserting this challenge, however, Mother fails to cite to anything in the record supporting her assertion that the expert failed to review this information.[6] *See* Idaho Appellate Rule 35(a)(6) (requiring appellant to cite record relied upon); *Hausladen v. Knoche*, 159 Idaho 358, 363, 360 P.3d 367, 372 (Ct. App. 2015) (declining to consider argument not supported by record citation). Regardless, the notes are in the appellate record and support the magistrate court's finding that Mother "has been inconsistent in her visitation," "has not bonded with [the child]," and "has not demonstrated appropriate responses" when visiting the child.

Third, Mother argues the ICWA expert "failed to identify with particularity the nature and scope of remedial services provided to Mother." Contrary to this argument, however, the expert did specifically identify the categories of services the Department attempted to provide Mother, as described above. Further, other evidence in the record explained the nature and scope of those services including, for example, the addiction counselor's testimony.

Finally, Mother contends that the ICWA expert "failed to identify with specificity" how "the prior termination of [Mother's] parental rights to three other children, lack of self-care, and [her] delusions about the existence of [the child's] twin sister" impact Mother's parental rights in this case. Although the expert's testimony did reference these factors and the magistrate court's decision notes this testimony, the court's decision does not indicate the court exclusively relied on these factors to conclude the Department met the ICWA requirements. To the contrary, the court expressly noted it relied on both the testimony of the ICWA expert and also of other witnesses to conclude the Department met the ICWA requirements. Moreover, a court may consider past conduct, such as the prior termination of parental rights, when determining whether grounds exist for terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 959, 277 P.3d 400, 406 (Ct. App. 2012).

---

[6] Contrary to Mother's assertion that the ICWA expert did not review the Department's visitation and monthly narrative notes, the expert's testimony suggests she actually did review at least some of those notes: "Q. You didn't review the notes of the department related to those visits, did you? A. It's a possibility *not all of them*." (Emphasis added.)

Mother's challenges to the magistrate court's findings and conclusions related to the ICWA fail. The court correctly applied the ICWA to the facts of this case. *See Doe*, 127 Idaho at 456, 902 P.2d at 481 (noting whether court correctly applied ICWA is subject to free review). Further, substantial and competent evidence supports the court's findings that "there is proof beyond a reasonable doubt that the reunification would likely result in serious emotional or physical damage to the child" and that "the Department made active efforts throughout the child protective case to avoid the breakup of the Indian family."[7] *See id.* at 458, 902 P.2d at 483 (noting substantial and competent evidence must support findings required by ICWA).

## C.     Best Interests

Mother also challenges the magistrate court's conclusion that terminating her parental rights is in the child's best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider, among other facts, the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care, and the parent's efforts to improve her situation. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Doe*, 152 Idaho at 956-57, 277 P.3d at 403-04.

On appeal, Mother asserts the evidence does not support the magistrate court's finding of best interests. Specifically, she argues that "there is insufficient evidence to support [that the

---

[7]     Mother argues the magistrate court failed to find "beyond a reasonable doubt" that the Department's "active efforts were documented in the record." The ICWA, however, only requires the court to find beyond a reasonable doubt that the parent's continued custody is likely to result in serious emotional or physical damage to the child; it does not require a finding beyond a reasonable doubt that the Department has made active efforts to reunite the family. *Compare* 25 U.S.C. § 1912(d) (regarding active efforts) *with* 25 U.S.C. § 1912(f) (regarding serious emotional or physical damage). Mother cites no authority to the contrary. *See Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018) (ruling appellate court does not address issues not supported by cogent argument and citation to legal authority, even in case terminating parental rights). Regardless, the evidence supports a finding, beyond a reasonable doubt, that the Department made active efforts to reunite the family.

10

Department] engaged in active efforts to reunify the Mother with her child" and that the ICWA expert's testimony is insufficient to support a finding of best interests, including "that reunification with Mother would be adverse" to the child. For the reasons discussed above, however, substantial and competent evidence--including both the ICWA expert's testimony and other evidence-- supports the findings and conclusions that the Department engaged in active efforts to reunify Mother with the child and that Mother's continued care of the child would likely result in serious emotional or physical damage to the child.

The only other factor Mother identifies as purportedly contradicting the magistrate court's best interest finding is "the goal of maintaining the Indian family due to cultural, familial history, and societal factors." Mother, however, acknowledges the child's "proposed adoptive parent/family is an Indian family." The evidence shows this permanent, approved adoptive placement with a member of the Tribes supports the child's cultural integration into the Tribes. For example, the ICWA expert testified that this placement is providing for the child's "cultural needs," including "regular activities [with the] tribal people, powwows, walks, and recreation for [the] children."

Finally, numerous witnesses testified that terminating Mother's parental rights is in the child's best interests. For example, the case manager, the case management specialist, and ICWA expert all testified Mother has no bond with the child; Mother failed to show she has a stable home for the child; and Mother has not addressed her substance abuse issues. Further, the child's guardian ad litem testified that the child is "doing quite well" in foster care, does not have any "outstanding needs," is bonded with his foster parent, needs a permanent home, and is "very happy where he is." Accordingly, substantial and competent evidence supports the magistrate court's conclusion that terminating Mother's parental rights is in the child's best interests.

## D.    Motion to Reopen

Mother asserts the magistrate court abused its discretion when it denied her motion to reopen the case. A district court may reopen a case before final judgment on a party's motion or on the court's own motion. *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 743, 9 P.3d 1204, 1209 (2000); *see also* Idaho Rule of Civil Procedure 59(a)(3) (providing in case tried without jury, court may open case to take additional testimony). A party seeking to reopen a case after trial to submit evidence must show some reasonable excuse, such as an oversight, an inability to produce the evidence, or ignorance of the evidence. *Idaho Power*, 134 Idaho at 744, 9 P.3d at

1210. The decision whether to reopen a case and receive additional evidence before the entry of a final judgment involves an exercise of discretion and will not be disturbed absent an abuse of discretion. *Id*.

Challenging the magistrate court's denial of Mother's motion to reopen the case, she argues that the court ruled "without the indication of any law, argument, reasoning and the process by which it reached its decision" and that her counsel's affidavit established "good cause" for granting the motion. We disagree, however, that Mother presented admissible evidence of "some reasonable excuse" for failing to appear at the termination hearing. Rather, the only indication of Mother's failure to appear is her unsworn, hearsay statement in her counsel's affidavit that Mother was unable to attend the hearing because she did not have "gas money, a ride, or nada." Moreover, Mother's excuse is not a reasonable excuse of the nature justifying a reopening of the case. *See, e.g., State v. Smith*, 170 Idaho 800, 812, 516 P.3d 1071, 1083 (2022) (affirming decision to reopen case before submission to jury where defense proposed untimely instruction on theory state "was unlikely to anticipate"); *Idaho Power*, 134 Idaho at 744, 9 P.3d at 1210 (affirming decision to reopen case after close of evidence based on confusion surrounding evidence already in record before remand); *Smith v. Smith*, 95 Idaho 477, 482, 511 P.2d 294, 299 (1973) (concluding trial court abused discretion by not reopening case for newly discovered evidence); *Davison's Air Service, Inc., v. Montierth*, 119 Idaho 991, 994, 812 P.2d 298, 301 (Ct. App. 1990) (affirming decision to reopen case prior to judgment where law unclear regarding burden of proof).

Mother's reliance on *State v. Doe*, 144 Idaho 534, 164 P.3d 814 (2007), in support of her argument that the magistrate court abused its discretion by denying her motion to reopen is misplaced. In that case, the magistrate court terminated the father's parental rights by applying a rebuttable presumption that terminating parental rights was in the child's best interests because the child had been in the State's custody for fifteen of the previous twenty-two months. *Id*. at 536, 164 P.3d at 816. On appeal, the Idaho Supreme Court vacated the judgment and remanded, holding that the State's custody of a child for fifteen of twenty-two months merely creates a presumption in favor of the Department initiating a termination petition. *Id*.

Unlike the magistrate court in *Doe*, the court in this case did not presume the child's best interests. Rather, the Department proved by substantial and competent evidence that terminating Mother's parental rights is in the child's best interests. That Mother did not challenge this evidence does not mean the court presumed the child's best interests in terminating Mother's parental rights.

Finally, we disagree with Mother's assertion the magistrate court's denial of her motion to reopen the case violated her fundamental rights. Contrary to this assertion, Mother received adequate notice of the termination hearing and her counsel represented that Mother was aware of the hearing date and that counsel was prepared for the hearing if Mother had attended. We also disagree with Mother's assertion that reopening the case would not prejudice the other parties. Mother's request to reopen the case to permit her "to defend, [to] present testimony, to cross-examine testimony, and [to] submit evidence and documentation" would necessarily require a substantial retrial. Further, the representation in counsel's affidavit that "the witnesses who testified are still available to reappear" for such a retrial is unsupported. Accordingly, the magistrate court did not abuse its discretion in denying Mother's motion to reopen the case.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's conclusions that Mother neglected the child; terminating Mother's parental rights is in the child's best interests; and the Department met the requirements of the ICWA. Further, the court did not abuse its discretion in denying Mother's motion to reopen the case. Accordingly, we affirm the judgment terminating Mother's parental rights.

Judge GRATTON and Judge HUSKEY **CONCUR**.